Filed 9/5/13 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ABRAM L. et al., Persons Coming Under the Juvenile Court Law. | B245706 |
| | (Los Angeles County Super. Ct. No. CK94529) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| Plaintiff and Respondent, | |
| v. | |
| ABEL L., | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on September 4, 2013, be modified as follows:

On page 1, in the caption, the designation of "Robert Stevenson, Referee" is replaced with "Marguerite D. Downing, Judge."

There is no change in the judgment.

Filed 9/4/13 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ABRAM L. et al., Persons Coming Under the Juvenile Court Law. | B245706 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ABEL L.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK94529) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Stevenson, Referee. Reversed and remanded.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Appellant Abel L. (father) appeals the juvenile court's dispositional order granting physical custody of his sons, Abram L. and Jacob L., to respondent Los Angeles County Department of Children and Family Services (the Department) for suitable placement. The court removed the children from their biological mother, Juanita R. (mother), after she allegedly threatened them with physical harm. Because father was a noncustodial parent, the juvenile court was required to adjudicate his request for physical custody of the children pursuant to Welfare and Institutions Code section 361.2.[1] Under the statute, father was entitled to physical custody of the children unless the juvenile court found that placement with father would be detrimental to the safety, protection, or physical or emotional well-being of the children. (§ 361.2, subd. (a).) The juvenile court, however, did not make an express finding of detriment as the statute requires (§ 361.2, subd. (c)), and it is unclear from the record whether the court considered the requirements of the statute before denying father's request for custody of his children. We thus reverse the order and remand the case for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *The Children's Family*

When this action commenced, Abram L. and Jacob L. were 15 and 13 years old, respectively. The two boys lived with mother, mother's husband Francisco R. (stepfather), and their adult sister Andrea L., who was 19 years old. Pursuant to a family court order, mother had physical and legal custody of Abram and Jacob for more than 10 years.

Father lived with his girlfriend. Abram and Jacob visited father on Saturdays, approximately every two weeks.

2.    *History of Domestic Violence and Physical Abuse*

Mother and stepfather had a history of domestic violence in the three years they had been together. The couple engaged in verbal confrontations about two times a day,

---

[1]    All future statutory references are to the Welfare and Institutions Code.

which often involved name-calling. On about two occasions the arguments escalated to physical violence. In December 2011, mother pulled out a box cutter knife and threatened stepfather with it.

According to Abram, Jacob and Andrea, mother occasionally physically abused them by hitting them with objects, such as a broom or belt, and with her fists. Mother once beat Abram on his leg, chest and face with a belt because he refused to attend a youth church conference. When Abram was 13 years old, mother hit him with a broom, injuring his eye. According to Jacob, mother hit him with a belt more than five times. Jacob also claimed that mother hit him with a stick when he was seven or eight years old. Andrea claimed that mother hit her with a metal pipe on one occasion, and with a broom on another.

Underlying mother's abuse of her children was her struggle with mental health. Father believed that mother had a "problem in her brain." He claimed that mother would say, "I want to kill you" if someone disagreed with her. Jacob described mother as "psychotic" and having a "loose screw in there." Abram described her as a "psycho." According to mother's adult daughter, Emily E., mother was "paranoid." Mother's sister stated that mother would be happy one day, and "down and sleeping all day, another day." The children's maternal grandmother stated that mother "has mood swings, and easily goes from being very lovable to being very angry, within a split second."

Approximately four months before these proceedings began, after mother hit Abram with a belt and Andrea with a metal pipe, Abram and Andrea left mother's home and went to stay with father and his girlfriend. About three months later, however, Abram and Andrea returned to live with mother because of conflicts they had with father's girlfriend.

3. *July 6, 2012, Incident*

On July 6, 2012, mother and Andrea had a verbal altercation at home. Mother broke a mirror, grabbed a piece of broken glass, and threatened to stab Andrea and Abram with it. At one point, mother also threatened to stab Abram with a knife. Andrea and mother called the police, who arrived at the scene and arrested mother for child

3

endangerment. The Department temporarily detained Abram and Jacob and placed them in foster care.

4. *The Juvenile Dependency Petition and Initial Court Hearing and Order*

On July 11, 2012, the Department filed a juvenile dependency petition requesting the juvenile court to take jurisdiction over Abram and Jacob pursuant to section 300, subdivisions (a), (b) and (j). All of the counts in the petition except one concerned mother's alleged acts or omissions. Count b-6 alleged that father had a history of using illicit drugs and was a current abuser of alcohol. This count, however, would later be dismissed by the juvenile court.

On the same day the petition was filed, the juvenile court held a hearing on the case. Father's counsel stated at the hearing that father could not take custody of Jacob and Abram because he did not yet have appropriate housing. The court entered an order stating that there was a prima facie case for detaining Abram and Jacob. The order also granted father unmonitored visits, required father to submit to random alcohol tests, and directed the Department to include in its jurisdictional report a discussion about placing the children with relatives.

5. *The Department's Investigation into Whether the Children Should Be Placed with Father*

Between the time the Department became involved in this matter on July 6, 2012, and the jurisdictional and dispositional hearing on September 25, 2012, the Department considered placing Abram and Jacob with several different relatives, including father. At the time the children were initially detained, however, the Department could not locate father.

Later, on several occasions, the Department asked Abram and Jacob whether they wished to live with father. Both boys stated that they did not wish to live with father if father continued to live with his girlfriend.

The children's maternal aunt stated she had concerns about the children living with father's girlfriend because she had heard the girlfriend "talk down" to Abram, tell him to look into her eyes when he talked to her, and make inappropriate "innuendos" to

4

the child. Abram stated that he and Andrea left father's home because father's girlfriend had taken Andrea's ring and argued with Andrea. Jacob stated that father's girlfriend did not "like" Abram and Jacob.

On August 6, 2012—a month after the children were detained—the Department interviewed father about being a potential caretaker for the children. Father stated he wanted his sons to live with him but he could not take care of them at the time because there was no space for the children where he was living. He also stated that he was saving money to rent a two-bedroom apartment for himself, Andrea and the two boys. At the time, father's girlfriend still lived with father, but father said he would be willing to live separately from her for the sake of his children.[2]

On September 5, 2012, father reported to the Department that he had found a bigger place to live for himself and the children. Father, however, declined to allow the Department to inspect his home because he was in the process of moving. He promised to contact the Department the next week to schedule an inspection. But father did not call the Department before the September 25, 2012, hearing.

After Abram and Jacob were detained and placed with a foster parent, father only visited them one time. Father advised the Department he had difficulty visiting the children because they lived in Palmdale and he lived in Los Angeles. In the meantime, Abram and Jacob were doing well in foster care.

The Department determined that it was in the best interest of the children to remain in foster care. In its report to the juvenile court dated September 25, 2012, the Department requested the court to enter an order removing the children from the "physical custody of the parents" pursuant to section 361, subdivision (c)(1). The Department did not request in this report that the juvenile court make a finding or order under section 361.2, subdivisions (a) or (c), which we shall discuss *post*.

---

[2]     Father later told the Department that he was not willing to "avoid contact" between his children and girlfriend, and that the children could not "manipulate" his life. Nothing in the record indicates, however, that father revoked his offer to live separately from his girlfriend in order to obtain custody of his children.

6.   *The Department's Assessment of Father's Alleged Alcohol and Drug*
     *Problem*

After the petition was filed, in mid and late July, 2012, the Department interviewed Abram, Jacob and mother regarding the allegations in the petition, including father's alleged drug and alcohol problem. Abram stated that father sometimes drinks alcohol and that father attends "AA meetings." Jacob stated that he did not know whether father had a problem with alcohol, and that he had never seen father drink. Mother stated that father used to use alcohol and cocaine but does not know if he continued to do so.

During a telephone interview by a Department social worker, father denied having current alcohol dependence, and expressed a willingness to comply with on-demand testing. Father took a drug and alcohol test on August 6, 2012 that was negative. The record does not indicate why father did not take additional drug and alcohol tests before the jurisdictional and dispositional hearing. Within approximately a month after that hearing, father took three additional drug and alcohol tests, all of which were negative.

7.   *The September 25, 2012, Hearing and Order*

On September 25, 2012, the juvenile court held a jurisdictional and dispositional hearing. At the hearing, the Department's attorney argued that placing the children with father was "premature" because father's home had not yet been assessed, father had only visited the children once since they were detained, the children did not want to live with father's girlfriend, and father had a history of alcohol abuse. Counsel for Abram and Jacob requested that the children not be placed with father because of the "friction" between the children and father's girlfriend and because the foster parent was "very, very good" to the children.

Father's counsel requested that the children be placed with father. As to the Department's concern that father's home had not been assessed, counsel stated that father did not call the social worker to arrange for an inspection because some required repairs were not completed. She further stated that those repairs "have been done." Counsel also stated that father's girlfriend was not residing in father's new apartment and, in any

6

case, the fact that the children did not like father's girlfriend was not a sufficient basis to deny father's request for custody. Counsel concluded by stating that "[t]he Department has not met its burden by clear and convincing evidence to prove that return [of the children] to the father at this time would create a substantial risk of detriment."

The juvenile court stated it agreed with the Department's counsel that placing the children with father was "premature." The court also expressed concerns about "inappropriate housing and drug testing." The court further stated: "Since the children are now stable, I'm disinclined to move them until I know that the placement with [father] is going to work out, even though he is non offending. I note . . . he's only visited once. So there's a relationship that needs to be resolved . . . . So, at this time, I'm not going to send them [to father.]" The court did not, however, refer to section 361.2 or use the operative language of the statute.

At the end of the hearing, the juvenile court entered an order dated September 25, 2012. The order sustained some counts in the dependency petition and dismissed other counts. The court dismissed the only count against father, count b-6. The order also declared the children dependents of the court, removed the children from mother's physical custody pursuant to section 361, subdivision (c),[3] gave the Department custody of the children for suitable placement, and provided father with family reunification services. The order further provided that father was to take five random drug and alcohol tests. The order did not make any reference to section 361.2.

Father filed a timely notice of appeal of the September 25, 2012, order.

---

[3]     The minute order erroneously refers to section 361, subdivision (b), but the court stated on the record that the children would not be returned to their "parents physical custody" under section 361, subdivision (c). We presume the reporter's transcript is the most accurate statement of the court's intent. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799-800.) We also note that we have observed this same erroneous reference to section 361, subdivision (b) in minute orders in many other cases. We urge the juvenile court to correct this error.

**CONTENTIONS**

Father argues that the juvenile court failed to make a finding that placing Abram and Jacob in his custody would be detrimental to the safety, protection or physical or emotional well-being of the children, as required by section 361.2. He further contends that there was no substantial evidence to support such a finding.

**DISCUSSION**

1. *The Juvenile Court Erroneously Failed to Apply Section 361.2*

Section 361, subdivision (c) provides that a dependent child may not be taken from the physical custody of a parent *with whom he resided at the time the petition was initiated*, unless the juvenile court finds by clear and convincing evidence that at least one of certain enumerated circumstances exists. One such circumstance is when "[t] here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

The juvenile court found that the requirements of section 361, subdivision (c)(1) were satisfied in light of *mother's* conduct. Mother did not appeal the dispositional order and we assume the court's finding was supported by substantial evidence. Abram and Jacob, however, could not be removed from *father's* physical custody under section 361, subdivision (c)(1) because they were not residing with him when the petition was initiated. (*In re V.F.* (2007) 157 Cal.App.4th 962, 969 (*V.F.*) [section 361, subdivision (c) " ' "does not, by its terms, encompass the situation of the noncustodial parent" ' "].)

The statute governing father's request that the children be placed in his custody was section 361.2. Subdivision (a) of the statute provides: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires

8

to assume custody of the child. If that parent requests custody, the court *shall* place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a), italics added.)

"A parent's right to care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution that will not be disturbed except in extreme cases where a parent acts in a manner incompatible with parenthood." (*In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1828 (*Marquis*).) "[T]o comport with the requirements of the due process clause, a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence." (*Id.* at p. 1829; accord *In re Isayah C.* (2004) 118 Cal.App.4th 684, 697 ["a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child' "].)

Under the plain terms of the statute, if the juvenile court finds that placing a child in the physical custody of a noncustodial parent would not be detrimental to the child within the meaning of section 361.2, subdivision (a), it must place the child in the physical custody of the noncustodial parent. If the child is placed with the noncustodial parent, the juvenile court may (1) order that the parent become legal and physical custodian of the child; (2) order that the parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted within three months; or (3) order that the parent assume custody subject to the supervision of the juvenile court. (§ 361.2, subd. (b).) Section 361.2, subdivision (c) provides that "[t]he court shall make a finding either in writing or on the record of the basis for its determination under subdivisions (a) and (b)."

Nothing in the record indicates that the juvenile court considered the requirements of section 361.2 in determining whether to deny father's request for physical custody of Abram and Jacob. The order dated September 25, 2012, does not refer to section 361.2

9

or the standard set forth in subdivision (a) of the statute to deny a noncustodial parent physical custody of his or her children. Likewise, in its oral remarks regarding the possible placement of the children with father, the juvenile court did not refer to section 361.2, or use the operative language of the statute. It is also worth noting that the Department did not request the court to consider section 361.2 in its September 25, 2012, report to the court. Therefore, we find the juvenile court did not apply the applicable law to father's request for physical custody of the children.

2. *Father Did Not Forfeit His Arguments*

The Department argues that father forfeited any argument that the juvenile court failed to apply or comply with section 361.2 because he did not raise the issue below. As a general rule, a party who does not raise an argument below, forfeits the argument on appeal. (*In re T.G.* (2013) 215 Cal.App.4th 1, 14.) Application of the forfeiture rule, however, is not automatic. (*Ibid.*) When an appellant raises a question of law, for example, the appellate court can exercise its discretion to address the issue. (*V.F.*, *supra*, 157 Cal.App.4th at pp. 967-968 [father did not forfeit his arguments that he was entitled to retain custody of his children under section 361, subdivision (c) and that the court was required to make findings under section 361.2].)

We conclude that father did not forfeit appellate review of whether the juvenile court failed to apply or comply with section 361.2. The arguments raised by father are primarily issues of law. Further, at the dispositional hearing, father's counsel argued that the Department did not meet its showing that placing the children in father's custody "would create a substantial risk of detriment." This argument appears to be based on section 361.2, subdivision (a). Under these circumstances, we decline to hold that father, a nonoffending and noncustodial parent, forfeited his arguments regarding his constitutionally protected interest in assuming physical custody over his children.

3. *We Decline to Make Implied Findings*

The Department argues that although the juvenile court did not make any express findings regarding alleged detriment to the safety, protection or physical or emotional well-being of the children, we can imply such findings. We reject this argument.

10

The court in *Marquis* rejected a similar argument. There, the juvenile court denied a noncustodial father's request for physical custody of his children under former section 361, subdivision (b), a statute that did not apply to the father because the children did not reside with him at the time the petition was initiated.[4] (*Marquis*, *supra*, 38 Cal.App.4th at pp. 1824-1825.) Because it was not clear from the record that the trial court even considered the correct statute—section 361.2—the Court of Appeal held that implied findings were not "warranted." (*Id.* at p. 1825.)

Likewise, in *V.F.*, the father's children were not residing with him when the petition was initiated because the father was incarcerated. The juvenile court removed the children from father's custody under section 361, subdivision (c), and did not consider section 361.2. The Court of Appeal held that the juvenile court applied the wrong statute. (*V.F.*, *supra*, 157 Cal.App.4th at p. 973.) The court further held: "Although this record arguably would support a finding that placement with [father] would be detrimental to the children, we believe the better practice is to remand the matter to the trial court where that court has not considered the facts within the appropriate statutory provision." (*Ibid.*; accord *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 ["the doctrine of implied findings may be given limited scope where an express finding is required"].)

---

[4]    In 1995, when the *Marquis* opinion was issued, former section 361, subdivision (b)(1) contained the same key provisions as the current version of section 361, subdivision (c)(1). (See *Marquis*, *supra*, 38 Cal.App.4th at pp. 1820-1821, fn. 6.)

Under *Marquis* and *V.F.*, it is inappropriate to make implied findings when the juvenile court fails to make express findings as required by section 361.2, subdivision (c). We thus decline to make implied findings in this case.[5]

4.       *There Was a Miscarriage of Justice*

The final issue is whether the juvenile court's failure to consider or apply section 361.2 resulted in a miscarriage of justice. We cannot reverse the court's judgment unless its error was prejudicial, i.e., "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*In re J.S.*, *supra*, 196 Cal.App.4th at p.1078.) We conclude that if the juvenile court applied section 361.2, it was reasonably probable that it would have found that placement of the children with father would not be detrimental to the safety, protection or physical or emotional well-being of the children.

The Department argues there were four factors that supported a finding of detriment. The first is that father "appeared to have an unresolved problem with alcohol and a history of substance abuse." The juvenile court, however, dismissed the allegations in the petition relating to father's alleged drug and alcohol problems. Further, father passed the only drug and alcohol test he was given before the dispositional hearing. Although mother claimed that father had substance abuse problems, she had not lived with father for many years, and there is no evidence in the record that father used illicit drugs or drank an inappropriate amount of alcohol at any time after these proceedings began.

---

[5]       The Department argues that there was substantial evidence to support an implied finding that placement of the children with father would be detrimental to the safety, protection, or physical or emotional well-being of the children. We normally review the sufficiency of the evidence to support a finding under the substantial evidence test, which requires us to review the entire record in a light most favorable to the order. (*Marquis*, *supra*, 38 Cal.App.4th at p. 1825.) Where the juvenile court fails to make express findings required by statute, however, we imply such findings, if at all, "only where the evidence is clear." (*Ibid.*) As we explain in Section 4 *post*, the evidence was far from clear in this case.

12

The Department also argues that placement with father was detrimental to the children because it had not yet inspected his residence. At the dispositional hearing, however, father's counsel stated that the repairs to father's residence were complete, and that the Department could conduct an inspection. Moreover, section 361.2 contemplates the Department inspecting a noncustodial parent's home *after* the parent is given physical custody of the child. Section 361.2, subdivision (b) states: "If the court places the child with that parent it may . . . [¶] . . . [¶] [o]rder that the parent assume custody subject to the jurisdiction of the juvenile court and require that a home visit be conducted *within three months*." (§ 361.2, subd. (b)(2), italics added)

The Department argues that father's girlfriend's relationship with the children "was also cause for concern." Father and his counsel, however, stated father's girlfriend was not living with father at the time of the dispositional hearing. In any case, merely because Abram and Jacob did not have a good relationship with father's girlfriend does not necessarily mean placing the children with father would be detrimental to the safety, protection, or physical or emotional well-being of the children. At the time of the dispositional hearing, Abram and Jacob were 15 and 14 years old, respectively. Although they were entitled to have their wishes considered, the boys were not entitled to decide where they would be placed. (*In re John M.* (2006) 141 Cal.App.4th 1564, 1570.)

Finally, the Department argues that placing the children with father would have been detrimental to them because "father was totally uninvolved in the children's lives." Father, however, was not a stranger to the children. Abram and Jacob had visited father every other Saturday for many years. Moreover, an alleged lack of a relationship between father and the children is not, by itself, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a). (*In re John M.*, *supra*, 141 Cal.App.4th at p. 1570 [child's wishes, need for services, lack of a relationship with father and other factors were not sufficient to support a finding of detriment].)

13

In light of the evidence in this case, or lack thereof, there is a reasonable probability that the juvenile court would have rejected the Department's detriment argument had it properly considered the standard set forth in section 361.2.[6] Accordingly, the juvenile court's failure to consider the applicable statute resulted in a miscarriage of justice requiring reversal of the court's dispositional order.

## DISPOSITION

The juvenile court's order dated September 25, 2012, is reversed, and the case is remanded for further proceedings consistent with this opinion.


**CERTIFIED FOR PUBLICATION**


KITCHING, J.

We concur:



CROSKEY, Acting P. J.



ALDRICH, J.

---

[6] We reach this conclusion based on the existing facts at the time of September 25, 2012 hearing, which we determined from the record on appeal. On remand the juvenile court must make a decision based on the facts existing at that time.

14