Filed 7/21/14  In re L.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| In re L.S. et al., Persons Coming Under the Juvenile Court Law. | D065226 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ2128A-E) |
| v. | |
| Christina S. et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of San Diego County, Carol Isackson, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant Christina S.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant Anthony N.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Dependency Legal Group of San Diego, Tilisha Martin and Carolyn Levenberg for Minor, C.P.

INTRODUCTION

Mother appeals from several juvenile court orders, include disposition orders issued as to her child C.P. on November 12, 2013, and as to her other children on January 8, 2014. Anthony N., the father of mother's youngest child, also appeals from the disposition order issued on January 8, 2014. As Anthony N.'s opening brief does not raise any issues regarding the January 8, 2014, disposition order, we dismiss his appeal as abandoned. (See *In re Sade C.* (1996) 13 Cal.4th 952, 994.) Similarly, as mother's opening brief only raises issues regarding the November 12, 2013, disposition order, we dismiss the remainder of her appeal as abandoned. (*Ibid.*)

Regarding the November 12, 2013, disposition order, mother contends there is insufficient evidence to support the court's finding C.P.'s placement with C.P.'s father (father) would not be detrimental to C.P. We disagree and affirm the judgment.

BACKGROUND

In September 2013 the San Diego County Health and Human Services Agency (Agency) detained C.P. and her four half siblings after law enforcement officers arrested mother. At the time of her arrest, mother had a bruise under her left eye from a domestic

2

violence incident with Anthony N. In addition, she admitted taking hydrocodone and Xanax the previous evening, she appeared to be under the influence of a controlled substance, and she had driven C.P. and two of her other children to school in that condition. There was also drug paraphernalia, a stolen gun, and fraudulent prescription medication in mother's home within the children's reach.

Father is divorced from mother. In 2009, while they were still married, father was arrested for a domestic violence charge, but the charge was dismissed for lack of sufficient evidence. Nonetheless, in 2011, mother obtained a restraining order against him[1] and, at some point, a court apparently ordered him to complete a domestic violence prevention program. He was charged in 2011 and 2013 for violating the court's order.

The Agency contacted father shortly after it detained C.P. Although mother's restraining order against father permitted him to have supervised visitation with C.P. on alternate Sundays from 10:00 a.m. to 4:00 p.m., father stated mother would not permit the visits.

Father appeared at the detention hearing and spoke with the social worker afterwards. He was concerned about the allegations against mother, remarking, "Someone could have gotten poked with a needle, ate meth and could have died or gotten really sick. It's completely negligent." Father was also concerned Anthony N. might do "something crazy" because Anthony N. was purportedly a gang member.

---

[1] The restraining order expired on January 26, 2014.

At a meeting with the social worker before the jurisdiction hearing, father indicated he had not had any contact with mother or C.P. since 2011 and, consequently, did not know what had been occurring in mother's home. Although he knew mother had a history of drug use, he did not notice whether she was using drugs while they were together because he was "too consumed with trying to make things right" between them. He believed mother kept C.P. from him and alienated him from C.P. because she wanted him to be completely gone.

Despite the restraining order, father denied there had been any physical domestic violence between him and mother and stated mother's contrary claims were untrue. He also stated he primarily resided in Texas, but returned to California in August 2013, and was arrested two days after his return for failing to complete domestic violence classes. He indicated he was on summary probation and was suppose to complete a 52-week domestic violence prevention class. He planned to remain in California until the dependency proceedings were concluded.

Father denied any drug or alcohol use. Nonetheless, when asked to drug test, he indicated he would test positive for marijuana. He stated he had a medical marijuana card and used the substance every other day to manage pain from a shoulder injury.

Father told the social worker he wanted C.P. placed with him. He acknowledged he would benefit from parenting classes and agreed to comply with the terms of his probation, including completing the court-ordered domestic violence prevention class.

Shortly after the detention hearing, father began supervised visits with C.P. and called her every day. On the way to the first visit, C.P. told the social worker she talked

4

to father on the phone. She also told the social worker she missed father and cried for him. At the visit, father and C.P. were excited to see one another. Father brought gifts for C.P. and her half siblings and showed her some clothing he had purchased for her. He also showed her photos and videos of the last time they had been together. They hugged each other throughout the visit and said they had missed one another.

Initially, the Agency recommended C.P. be placed in foster care because father had a history of domestic violence, which he minimized, he had not yet complied with the terms of his probation, he had only recently been reintroduced into C.P.'s life, and he needed more time to demonstrate his ability to protect C.P. In addition, father had not yet completed the court-ordered domestic violence prevention class.

However, by the time of the contested disposition hearing at issue in this appeal, the Agency recommended C.P. be placed with father. Minor's counsel supported the recommendation. At that point, mother had recently been arrested on several charges, including burglary, obtaining a controlled substance by fraud, and possessing drug paraphernalia. Meanwhile, father had maintained consistent visits with C.P. and was participating in domestic violence prevention and parenting programs.

The parenting program supervised two of father's visits with C.P. and reported father's interaction with her was appropriate, positive, and loving. Paternal grandfather supervised two other visits, one to a pumpkin patch with a petting zoo and one to a community event, and did not report any concerns with the visits. One of the parenting program representatives stated father was doing well, he was "appropriate and sweet with

5

[C.P.]" and there were no concerns about him. The representative further stated father and C.P. were "totally bonded" and it was obvious C.P. loved her father very much.

A few days before the contested disposition hearing, father was arrested for failing to appear at a court hearing to provide proof of enrollment in the domestic violence prevention class. However, father had another hearing scheduled to provide the requisite proof.

When father learned the Agency was considering recommending the court place C.P. with him, he stated he would ensure she had regular visits with her half siblings and mother. He understood C.P. was very close to her half siblings and mother and did not want C.P. to lose contact with them.

At the contested disposition hearing, the Agency's social worker testified she had completed an evaluation of father's home and it "met minimal standards of care." More particularly, she testified, "He had a place for [C.P.] to sleep, the home was appropriate, and no concerns were noted in the home evaluation." Mother did not cross-examine the social worker or offer any affirmative evidence.

At the conclusion of the contested disposition hearing, the court ordered C.P. placed with father. As part of the factual basis for its order, the court stated, "As to [father], the court recognizes, first of all, that he came here from Texas immediately upon learning or very quickly upon learning of these proceedings. And the evidence is clear that he has participated in all of the voluntary services that were recommended for him. [¶] The visits have been excellent . . . . As for the arrest after his return here, the court's understanding is that that was for an outstanding warrant and that that was taken care of

6

and that [father] has been law abiding and an appropriate parent since he arrived here. [¶] As to the domestic violence between [mother] and [father], the evidence before the court is that since the restraining order that the court has from 2011 . . . there have not been issues between [father] and the mother that have impacted the children or affected the children. [¶] In fact, it's the court's understanding that the restraining orders have been followed and that there has not been any further incidents of domestic violence. [¶] As to the marijuana use, the evidence before the court is that there has been discussion with [father] about his medical marijuana card and a safety plan and a directive for appropriate use have been implemented. [¶] . . . [¶] . . . I am convinced, based on the information that is before the court, that [father] is able to be a protective parent for [C.P.], that it is appropriate, based on the relationship that she has currently with him and his willingness to participate in services and to work cooperatively with the Agency, that placement is clearly in her best interest."

## DISCUSSION

A juvenile court must place a dependent child in the care of a nonoffending, noncustodial parent unless it finds the placement would be detrimental to the child's safety, protection, or physical or emotional well-being. (Welf. & Inst. Code § 361.2, subd. (a).) The party opposing placement with the nonoffending, noncustodial parent has the burden of establishing detriment to the child by clear and convincing evidence. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 461; *In re. Z.K.* (2011) 201 Cal.App.4th 51, 70.)

On appeal, " '[w]e review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact

7

could find clear and convincing evidence that the [child] would suffer such detriment. [Citations.] Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt.' " (*In re John M.* (2006) 141 Cal.App.4th 1564, 1569-1570; accord *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262.)

Here, the record does not support a finding there was a high probability C.P.'s placement with father would be detrimental to C.P. Rather, the record shows father began actively participating in this case as soon as he learned of C.P.'s initial detention. He also voluntarily enrolled in a parenting program and began having regular telephone contacts and visits with C.P., which by all accounts went very well. In addition, he had an appropriate home for C.P., he understood her need to remain connected to her half siblings and mother, and he committed himself to facilitating ongoing visitation with them.

Although father has a history of domestic violence with mother and was subject to a restraining order as to her, father has enrolled in a lengthy court-ordered domestic violence prevention program and there have been no further domestic violence incidents between him and mother since the restraining order issued. Similarly, although he has a medical marijuana card and regularly uses marijuana for pain management, he has agreed to a safety plan to ensure C.P. is not endangered from his use.

Moreover, the court did not leave father to his own devices when it placed C.P. with him. As part of the court's disposition order, the court directed the Agency to provide father with family maintenances services. As the court explained to father, the

provision of these services "means that the social worker will be meeting with you, talking to [C.P.], checking on the services that you're provided." Accordingly, we conclude mother has not established there was clear and convincing evidence placing C.P. with father would be detrimental to C.P.

DISPOSITION

The judgment as to the disposition order dated November 12, 2013, is affirmed. Mother's appeal of the orders dated November 7, 2013, December 9, 2013, and January 8, 2014, is dismissed as abandoned. Anthony N.'s appeal of the order dated January 8, 2014, is dismissed as abandoned.

MCCONNELL, P. J.

WE CONCUR:

MCDONALD, J.

AARON, J.