Filed 8/1/14  In re Brooke G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re BROOKE G., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM H.,<br><br>Defendant and Appellant. | F068724<br><br>(Super. Ct. No. 12CEJ300053-3)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Mary Dolas, Commissioner.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Gomes, Acting P.J., Kane, J. and Franson, J.

William H., a noncustodial father, appeals from the juvenile court's dispositional order denying him custody of his 19-month-old daughter Brooke under Welfare and Institutions Code section 361.2.[1] He contends the juvenile court erred in not specifying a factual basis for its determination that returning Brooke to his custody would be detrimental. Alternatively, he contends substantial evidence does not support the juvenile court's finding of detriment. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In August 2013, police were called after then eight-month-old Brooke was found on the floor crying and her mother, Jennifer, was intoxicated and asleep in bed. Jennifer was unaware that Brooke had fallen on the floor. Brooke was taken into protective custody by the Fresno County Department of Social Services (department), evaluated in the emergency room and released. Jennifer was arrested for child endangerment.

Jennifer has a history of substance abuse, child welfare intervention and failure to benefit from family reunification and voluntary family maintenance services. Consequently, the department filed a dependency petition on Brooke's behalf, alleging she came within the juvenile court's jurisdiction based on Jennifer's failure to protect her. The department identified William as Brooke's alleged father.

The juvenile court ordered Brooke detained pursuant to the petition and offered Jennifer substance abuse treatment and parenting classes. The department placed Brooke in foster care.

In September 2013, the juvenile court convened the jurisdictional hearing. William made his first appearance and was appointed counsel. William's attorney advised the court that William believed he could be Brooke's father. He had taken her into his home and she lived with him and he has acted as her father. William requested a

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

paternity test, which the court ordered. He also asked for visitation and to be assessed for placement.

The paternity test established William as Brooke's biological father. He asked the juvenile court to elevate him to presumed father status and place Brooke in his custody.

In October 2013, the juvenile court sustained the dependency petition and elevated William to presumed father status. The court also set the dispositional hearing and, recognizing that William was Brooke's noncustodial parent, ordered the department to assess him for placement. During the hearing, minor's counsel expressed concern about William's criminal history, which, according to the record, included misdemeanor convictions in 2002 for willful cruelty to a child and infliction of corporal injury on a spouse or cohabitant and a felony conviction the same year for possession of a controlled substance for sale and transporting a controlled substance.

In its report for the dispositional hearing, the department recommended the juvenile court provide Jennifer and William reunification services but recommended against placing Brooke in William's custody. The department opined that doing so would be detrimental to Brooke mainly because of William's alcohol consumption. On the morning of the paternity test, Brooke's foster father stated that William appeared to be under the influence of some substance because he was speaking loudly and rapidly and swaying from side to side. William also attempted to take Brooke from the foster father and was threatening to him and his wife. The woman responsible for taking the DNA samples confirmed that William was threatening and she feared for her own safety. She called the authorities and two sheriff's deputies escorted William from the premises after the testing was complete.

William admitted drinking alcohol in the morning before taking his paternity test. He told the social worker that he drank alcohol three times a week but rarely drank to intoxication. He had participated in two substance abuse treatment programs but did not believe he had a problem with alcohol. He also said he smoked marijuana every night for

3

medicinal purposes and showed the social worker his medical marijuana card. He said he could quit using drugs and alcohol. The social worker asked William about his criminal history. He said his criminal convictions were "dope cases," which occurred when he was young.

The department also opined in its dispositional report that placing Brooke with William could cause her severe emotional distress. According to the visitation narratives, Brooke was very uncomfortable with William during visits. She clung to the staff, not wanting to be held by William, and would not stop crying in his presence. Afterward, her foster parents stated she let out "terrible screams." Once the department included Jennifer in Brooke's visits with William, however, Brooke was calmer. Still, Brooke remained apprehensive toward William.

In November 2013, the juvenile court conducted the dispositional hearing. William objected, through his attorney, to evidence in the department's report that he was intoxicated and trying to take Brooke from her foster parent at the paternity testing facility. He also objected to the department's recommendation not to place Brooke with him.

The juvenile court adjudged Brooke its dependent, ordered her removed from Jennifer's custody and ordered reunification services for Jennifer and William. As to William's request for custody, the juvenile court denied it, stating: "Based on the information that's been provided, [the] court will acknowledge that the noncustodial parent [William] has requested custody of [Brooke]. I'll find at this time that there [was] sufficient evidence that placement … would be detrimental to [Brooke's] safety, protection, [and] physical and emotional well-being …."

This appeal ensued.

## DISCUSSION

William contends the juvenile court's decision not to place Brooke in his custody under section 361.2 was error because the juvenile court did not set forth a factual basis

4

to support its decision. Alternatively, he contends substantial evidence does not support the juvenile court's finding that it would be detrimental to place Brooke in his custody. We find no merit to his contentions.

Section 361.2 protects the custody rights of a noncustodial parent when the juvenile court removes the child from the custodial parent. In essence, it requires the juvenile court to place the child with the noncustodial parent unless doing so would be detrimental to the child. Specifically, section 361.2 states in subdivision (a):

> "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

A juvenile court's finding of detriment under section 361.2, subdivision (a) (subdivision (a)) must be by clear and convincing evidence. (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262 (*Patrick S.*).) If the juvenile court finds detriment under subdivision (a), subdivision (c) of section 361.2 requires it to "make a finding either in writing or on the record of the basis for its determination."

William contends section 361.2, subdivision (c) (the statute) requires the juvenile court to set forth a factual basis to support its finding of detriment either orally or in writing. He further contends this court cannot imply the requisite factual findings if the juvenile court fails to expressly make them, citing *In re Marquis D.* (1995) 38 Cal.App.4th 1813 (*Marquis D.*); *In re V.F.* (2007) 157 Cal.App.4th 962 (*V.F.*) and *In re Abram L.* (2013) 219 Cal.App.4th 452 (*Abram L.*).

We find no support for William's contention in the plain language of the statute. The statute does *not* require the juvenile court to set forth a factual basis to support its detriment finding. Rather, it requires the juvenile court to make an express finding of

5

detriment if it determines that the child cannot be placed with the noncustodial parent.  In this case, the juvenile court made an express finding of detriment on the record.

Further, we are confident the Legislature would have inserted the requirement William urges had it so intended.  In fact, it did, for example, in section 366.22, which governs the proceedings at the 18-month review hearing.  In subdivision (a) of section 366.22, it states:  "If the child is not returned to a parent … , the court shall specify the *factual basis* for its conclusion that return would be detrimental."  (Italics added.)

Having concluded the statute does not require the juvenile court to specify a factual basis for its finding of detriment, we need not discuss *Marquis D.*, *V.F.* and *Abram L.* except to say that the issue in those cases was whether the appellate court could imply a finding of detriment, not whether it could imply a factual basis to support a finding of detriment.  In those cases, the juvenile court decided not to place a child with the noncustodial parent but did not make a finding of detriment.  The appellate courts declined to imply a finding of detriment and reversed because it was not clear the juvenile court even considered section 361.2, subdivision (a) in making its decision.  (*Marquis D.*, *supra*, 38 Cal.App.4th at pp. 1820-1821, 1824-1825, 1830; *V.F.*, *supra*, 157 Cal.App.4th at pp. 965-966; *Abram L.*, *supra*, 219 Cal.App.4th at p. 455.)

In light of the foregoing, we conclude the juvenile court complied with section 361.2, subdivision (c) by making an express finding of detriment and turn to William's contention that substantial evidence does not support it.

William contends the juvenile court's finding of detriment is not supported by substantial evidence because the court improperly relied on his alcohol abuse and Brooke's negative reaction to him in assessing detriment.  Such evidence, he argues, is insufficient to support a finding of detriment.

On appeal, we review a juvenile court's decision under section 361.2, subdivision (a) for substantial evidence, bearing in mind the heightened clear and

convincing evidence burden of proof required by the statute. Under the substantial evidence test, we "review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that placement would be detrimental to the child." (*Patrick S.*, *supra*, 218 Cal.App.4th at p. 1262.)

In this case, we conclude substantial evidence supports the juvenile court's finding of detriment. The juvenile court had before it evidence that William had an unresolved problem with alcohol and a history of substance abuse. He was treated twice for alcohol abuse yet drank on a daily basis. On the morning of the paternity test, he was intoxicated and threatening, requiring law enforcement intervention. Further, there was evidence that Brooke had an extremely negative reaction to William during and after visitation to the point that she screamed and cried. Given William's alcohol abuse and Brooke's aversion to him, the juvenile court could find that placing Brooke in William's custody could result in physical and/or emotional harm to her.

William argues, citing *Abram L.*, *supra*, 219 Cal.App.4th at p. 463, that the juvenile court could not consider his alcohol abuse without having sustained an allegation related to his alcohol abuse in the dependency petition. However, *Abram L.* does not stand for that proposition. As we stated above, the court in *Abram L.* concluded that the juvenile court did not consider or apply section 361.2. The question then became whether a miscarriage of justice occurred as a result. The *Abram L.* court concluded that it had and reversed the juvenile court's dispositional order. In reviewing the miscarriage of justice issue, the *Abram L.* court addressed factors the department argued supported a finding of detriment. One of those factors was that the "'father appeared to have an unresolved problem with alcohol.'" (*Abram L.*, *supra*, at p. 463.) However, the *Abram L.* court did not find evidence that the father had an alcohol problem in part because the juvenile

7

court dismissed the allegations in the petition relating to the father's alleged alcohol problems. Thus, the *Abram L.* court did not hold, as William contends, that the juvenile court cannot find detriment unless it previously sustained an allegation of alcohol abuse. Rather, it considered the fact that the juvenile court did not sustain an allegation of alcohol abuse as some evidence that the father in that case was not abusing alcohol. (*Id.* at p. 463.)

William further argues, citing *In re John M.* (2006) 141 Cal.App.4th 1564 (*John M.*), that the lack of a parent/child relationship is insufficient by itself to support a finding of detriment under section 361.2, subdivision (a). The juvenile court in this case did not base its detriment finding solely on William's lack of a relationship with Brooke. As we discussed above, William's alcohol abuse was also a factor. In any event, *John M.* is distinguishable on two key facts.

In *John M.*, the juvenile court denied a noncustodial father, who lived out of state, custody of his 14-year-old son, basing its detriment finding in part on the son's wishes, lack of relationship with his father, sibling bond and need for services. The appellate court concluded those factors did not support the juvenile court's detriment finding and reversed. (*John M., supra,* 141 Cal.App.4th at pp. 1570-1571.) However, there are two important factors that distinguish *John M.* from William's case. In *John M.* the minor was a teenager and the lack of a parent/child relationship related to a four-year lack of contact. However, the father resumed contact with his son a year before the dependency proceedings were initiated and there are no facts in the opinion that the son exhibited a negative emotional reaction to his father. (*Id.* at p. 1571.) Here, Brooke is an infant and had an aversion to William. More importantly, there was no evidence in *John M.* that the father's conduct posed any threat to his son or that he could not properly care for his son. (*Id.* at pp. 1568, 1571.) In contrast, there was strong

evidence in this case that William was abusing alcohol and would place Brooke at risk of physical and/or emotional harm if she were placed in his custody.

We conclude that the department met its burden of proving detriment by clear and convincing evidence, and we affirm the juvenile court's orders finding Brooke's placement with William would be detrimental within the meaning of section 361.2.

## DISPOSITION

The judgment is affirmed.