Filed 9/27/22  In re C.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re C.H. et al., Persons Coming Under the Juvenile Court Law. | C094526, C094626 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.S., <br><br> Defendant and Appellant. | (Super. Ct. Nos. 20DP00001, 20DP00002, 20DP00003, 20DP00004) |

T.S., mother of the minors (mother), appeals from the juvenile court's orders terminating parental rights and freeing the minors for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother claims the juvenile court erred in finding the beneficial

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

parental relationship exception to adoption did not apply. We conclude mother forfeited her challenge but in any event there was no miscarriage of justice. We will affirm the juvenile court's orders.

BACKGROUND

During the relevant time period, mother's children included Ch. (one month old), Ca. (three years old), Co. (four years old), and C.N. (12 years old) (the minors). Mother experienced domestic violence at the hands of the minors' father, C.H., Sr. (father), even though criminal protective orders were in place.

Mother and the minors came to the attention of the Butte County Department of Employment and Social Services (Department) when mother gave birth to the youngest minor and the newborn's lab results were positive for methamphetamine and amphetamine. Mother left the hospital with the minor against medical advice and without any money for food or transportation. Social Worker Natasha Chronister and several law enforcement officers went to mother's residence. Mother denied having used methamphetamine more than once during her pregnancy and refused to drug test. She became irate and aggressive toward Chronister and the officers and was eventually arrested. The minors were detained. Later that day, mother tested positive for methamphetamine. The Department's attempts to locate father were unsuccessful.

On January 2, 2020, the Department filed dependency petitions on behalf of each of the four minors pursuant to section 300, subdivisions (b) and (g). The petitions alleged mother failed to protect the minors based on her substance abuse and the domestic violence perpetrated against her by father. The juvenile court ordered the minors detained and subsequently sustained the petitions, declaring the minors dependents of the juvenile court.

According to the disposition report, the minors were placed with the paternal grandmother as an emergency placement. Father was in custody on domestic violence charges and mother had been arrested in February 2020 for obstructing a public officer.

2

Both parents repeatedly failed to abide by the domestic violence restraining order in place, continually failed to drug test, and failed to participate in substance abuse, domestic violence, or mental health services.

In May 2020, the juvenile court ordered the Department to provide the parents with reunification services. As of October 2020, however, the Department was recommending termination of services due to the parents' concerning behaviors and lack of participation and progress. In particular, mother was dropped from the nurturing parent program because of lack of attendance, she was closed out of her outpatient drug treatment program due to her disruptive behavior, she failed to reengage in any outpatient drug treatment program, she either failed to appear for scheduled drug tests or tested positive for methamphetamine and cocaine, and she did not begin counseling. It was reported that mother was argumentative with Department staff, threatened staff members and their families, and attempted to sabotage the minors' placement. The Department further reported that all four minors had made significant behavioral progress and developed a strong connection with their caregiver (their paternal grandmother), who was willing to provide permanency for all four children through adoption.

The juvenile court found the parents made minimal progress, terminated reunification services to the parents, and set the matter for a section 366.26 hearing.

The Department's section 366.26 report stated the minors continued to make behavioral progress and thrive in the care of their paternal grandmother, with whom they felt safe. The minors and mother had weekly supervised visits in person. The Department recommended that the juvenile court terminate parental rights and free the minors for adoption by the paternal grandmother.

At the section 366.26 hearing, the then 13-year-old minor, C.N., testified outside the presence of mother -- father did not attend the hearing -- that she felt safe with and wanted to be adopted by her paternal grandmother and she wanted the plan to be permanent. Weekly visits with mother were going "okay," but C.N. wanted to decrease

3

visits to once a month so there would be less stress on her and her siblings. She felt there should be no visits between mother and the other three minors because mother was "not happy" and was "doing bad things." C.N. testified she would be "sad" if she were cut off totally from mother after being adopted, but she did not believe the paternal grandmother would sever the relationship. She understood that adoption would mean that her mother's rights would be terminated, and she did not believe her siblings' relationships with mother would be destroyed if they were adopted.

Adoptability expert Lenette Dornon testified that, although there was a significant reciprocal relationship between mother and the minors, the benefit of adoption outweighed maintaining that relationship, and adoption was in the minors' best interests. Dornan testified the minors also had a significant reciprocal relationship with the paternal grandmother, they had been stable in their placement with the paternal grandmother for nearly 18 months, and they were all showing signs of significant behavioral progress.

Mother objected to the minors' placement with the paternal grandmother, preferring that they be placed with the maternal grandmother. She believed the paternal grandmother would attempt to prohibit contact with the minors and keep them from her. Mother asked that the juvenile court order a permanent plan of legal guardianship instead of adoption.

The juvenile court found the minors adoptable, terminated parental rights, and identified adoption as the permanent plan.

DISCUSSION

Mother contends the juvenile court erred in finding the beneficial parental relationship exception to adoption did not apply.

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' [Citation.] If the court finds the child is adoptable, it must terminate parental rights absent

4

circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include the beneficial parental relationship exception, applicable when the parents have maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i); *In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*).) The party claiming the exception has the burden of establishing the existence of relevant circumstances. (*Caden C.,* at pp. 636-637; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).)

The beneficial parental relationship exception to adoption "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The factual predicates of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) We do not substitute our judgment for that of the juvenile court as to what is in the child's best interests. (*Id.* at pp. 640-641.)

Mother contends the Department failed to report on the amount and nature of any contact between the minors and their parents and other members of their extended family pursuant to sections 366.21, subdivision (i)(1)(B) and 366.22, subdivision (c)(1)(B). The Department counters that mother forfeited her challenge because she did not assert it in the juvenile court. Mother replies that we should nevertheless exercise our discretion to address the challenge because it involves an important issue and a question of law. (*In re*

*Abram L.* (2013) 219 Cal.App.4th 452, 462; *In re S.B.* (2004) 32 Cal.4th 1287, 1293-1294.)

Mother was present at the section 366.26 hearing, addressed the juvenile court, and cross-examined the adoptions specialist. But in the juvenile court she did not challenge the adequacy of the adoption assessment or the section 366.26 report, and she did not object to the juvenile court's reliance on those documents. Accordingly, she forfeited her contention on appeal. (See *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [failure to object to adequacy of adoption assessment]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412 [failure to object to inadequacy of adoption assessment]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [failure to object to lack of preliminary assessment of prospective guardian]; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1339 [failure to object to lack of bonding study]; *In re M.V.* (2014) 225 Cal.App.4th 1495, 1508-1509 [failure to object to timeliness of § 241.1 assessment].)

In any event, there was no miscarriage of justice because the juvenile court had sufficient information to determine that the beneficial parental relationship exception did not apply. (*In re Dakota S., supra*, 85 Cal.App.4th at pp. 502-503; §§ 366.21, subd. (i)(1)(B), 366.26, subd. (c)(1)(B).) On the first element, the Department reported that mother generally visited the minors once per week. But on the second and third elements, the adoptions specialist testified that although the minors had a significant reciprocal relationship with mother, the benefits of adoption outweighed the benefits of maintaining that relationship. She added that adoption was in the minors' best interests because they also had a significant reciprocal relationship with the paternal grandmother, they had been stable in her care for nearly 18 months, and they had made significant progress in key areas of concern. The specialist opined that it would not be detrimental to the minors to sever their relationship with mother.

## DISPOSITION

The juvenile court's orders are affirmed.

/S/
_____
MAURO, Acting P. J.

We concur:

/S/
_____
HOCH, J.

/S/
_____
BOULWARE EURIE, J.