Filed 10/14/14  In re Aria G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ARIA G., a Person Coming Under the Juvenile Court Law. | B253952 |
| | (Los Angeles County Super. Ct. No. DK00993) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| P.W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Juvenile Court Referee.  Affirmed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant, P.W.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant, H.G.

No appearance by Plaintiff and Respondent.

_____

P.W. (Mother) appeals from the juvenile court's order placing her eldest child, 10-year-old Aria, with her noncustodial, nonoffending father, H.G., thus separating her from her half-siblings, A.W. and D.W. Mother contends the juvenile court failed to consider the importance of the bond between Aria and her half-siblings and her clearly expressed preference to live with them. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 18, 2013 the Los Angeles County Department of Children and Family Services (Department) initiated dependency proceedings on behalf of Aria, A.W. and D.W. pursuant to Welfare and Institutions Code section 300, subdivisions (a)[1] (serious physical harm) and (b) (failure to protect) alleging mother and D.W., Sr. (father of A.W. and D.W.) had engaged in violent altercations in the presence of the children and D.W., Sr. had physically abused D.W. The petition also alleged Mother had a history of drug use and currently used drugs, including methamphetamine, ecstasy and marijuana; D.W., Sr. had a history of drug use and currently used drugs, as well as cared for the children while under the influence of drugs; and the home was filthy and unsanitary. At a detention hearing the same day the court detained the children in shelter care and found H.G. to be the presumed father of Aria. The Department was given discretion to release the children to appropriate relatives or nonrelated, extended family members.

In a November 18, 2013 report prepared for the jurisdiction and disposition hearing, the Department stated H.G. had been located and wanted custody of Aria although he had not had contact with her since 2011 because Mother had been "hiding" her. According to H.G., prior to 2011 Aria had been in H.G.'s care for approximately one year, and she had a positive relationship with H.G.'s live-in girlfriend and her 7-year-old daughter. As reflected in a supplemental report dated November 18, 2013, Aria told a Department investigator she did not want to live with H.G. unless her half-siblings could as well; however, she did want to visit him. Mother expressed concern about Aria living with H.G., explaining there had been domestic violence between Mother and H.G. and

---

[1] Statutory references are to the Welfare and Institutions Code.

2

claiming H.G. had only lived with Aria for six weeks. The maternal grandmother reported H.G. had been absent most of the time Aria was in his care and Aria had been frightened and nervous because H.G. and his girlfriend frequently fought. Mother and the maternal grandmother also expressed concern about drug abuse by H.G. and alcohol abuse by his girlfriend.

Counsel for H.G. was appointed at the November 18, 2013 hearing and represented that H.G. was willing to drug test. Counsel also requested the court order visitation for H.G. and Aria and expedite placement with him. Counsel for the children, as well as counsel for the Department, requested Aria not be placed with H.G. because of concerns the Department had raised in its supplemental report. The court ordered visitation for H.G. and Aria, directed the Department to set up a drug test schedule for H.G. and continued the matter.

In a supplemental report dated January 9, 2014 the Department informed the court H.G. had tested positive for marijuana on November 19, 2013 and failed to appear for a drug test on December 12, 2013. H.G. told Department personnel he had a medical marijuana card and used marijuana approximately four times a month for pain from a work-related injury. He denied past or current use of any other drug and indicated he was willing to stop using marijuana even though it was used to control pain. The report also reiterated Aria's desire to remain placed with her half-siblings notwithstanding the Department's assurance she could visit with them if she was placed with H.G. According to the report, the Department discussed Aria's wishes with H.G., but H.G. believed she was too young to make her own decisions and said he had her best interests in mind. In a January 22, 2014 last minute information for the court, the Department reported H.G. had failed to appear for a December 23, 2013 drug test.

At the continued January 22, 2014 jurisdiction and disposition hearing the court sustained an amended petition after Mother and D.W., Sr. pleaded no contest to the allegations. The court ordered Aria be placed with H.G., stating "the case law and the code is clear" that section 361.2 requires the court, upon removal of a child from a custodial parent, to place the child in the care of the noncustodial parent unless it finds by

clear and convincing evidence the placement would be detrimental. The court explained, "[C]ases . . . talk[] about the fact that children are children. And yes, the court is to take some heed as to their desires, but that's why they're nine and that's why they are not adults. So if [H.G.] wants to be a jerk and put her out of the family home, I can't do anything about that. So it'll be home-of-parent father."

Counsel for the Department asked the court to consider the supplemental and last minute reports indicating H.G. had tested positive for marijuana and missed two drug tests. The court responded that the Department had not filed a petition against H.G. or presented clear and convincing evidence of detriment. When the maternal grandmother protested it was not fair to place Aria with H.G. because "for the last three years her dad has not picked her up," the court agreed, but reiterated the Department had not carried its burden to show detriment: "[T]he problem is that the dependency scheme is not that the parent has to prove why the court needs to take away; it's the Department's obligation to prove why there's a substantial risk of detriment to a parent who otherwise has a constitutional right to the care, custody, control of the child, absent some proof, that by substantial evidence that the child's at risk. . . . And the law, as I've indicated, is very clear, that as much as I want to keep Aria together with the rest of the family the law is very clear that I can't. So I appreciate everybody's concerns, but I'm hamstrung."[2]

## DISCUSSION

### 1. *Standard of Review*

Although the juvenile court's factual determinations are generally reviewed for substantial evidence, the Department's failure to carry its burden of proof to demonstrate detriment by clear and convincing evidence is properly reviewed, as in all failure-of-proof cases, for whether the evidence compels a finding in favor of the appellant as a

---

[2]    Describing H.G. as the "appropriate respondent," the Department informed this court it would not file a brief in support of the juvenile court's order because it was contrary to the Department's recommendation Aria not be placed with H.G.

4

matter of law.[3]  (See *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"]; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528 [same].)  The question "'becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.)

2. *The Department Failed To Carry Its Burden To Demonstrate by Clear and Convincing Evidence Separating Aria from Her Half-siblings Would Be Detrimental*

Section 361.2, subdivision (a),[4] requires the juvenile court to "place a dependent child with a noncustodial, nonoffending parent who requests custody unless the placement would be detrimental to the child."  (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1422 (*Luke M.*).)  "[U]nder this statute a court has broad discretion to evaluate not only the child's physical safety but also his or her emotional well-being.  In an appropriate case, all that might be required is a finding such a placement would impair the emotional security of the child."  (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1490.)  In determining detriment, "a court is authorized to evaluate the appropriateness of keeping half-siblings together, and to consider sibling relationships as one factor, among many, when determining detriment for purposes of its placement decisions."  (*Luke M.*, at

---

3      It is immaterial that Mother, not the Department, is the appellant.

4      Section 361.2, subdivision (a), states, "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

p. 1422; see *id.* at p. 1425 ["detriment finding can properly be supported by the emotional harm arising from the loss of sibling relationships even in the absence of the noncustodial parent's contribution to the detriment"].) Because a parent's right to the care, custody and management of a child is a fundamental liberty interest protected by the federal Constitution, a finding of detriment pursuant to section 361.2, subdivision (a), must be made by clear and convincing evidence. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 461.) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*Luke M.*, at p. 1426.)

Mother contends the court failed to consider clear and convincing evidence severing Aria's bonded sibling relationships would be detrimental to her emotional well-being, believing it was "hamstrung" to release Aria to H.G. because the Department had failed to file a petition as to him. To be sure, Aria did not want to be separated from her half-siblings; she was even willing to live with H.G. if her half-siblings could be placed with him as well. However, without more than Aria's statements to the social worker we cannot say—as we must in failure-of-proof cases—that the evidence compels as a matter of law a finding of detriment if Aria were to be placed with H.G.

*In re John M.* (2006) 141 Cal.App.4th 1564 (*John M.*) is instructive. John, a 13-year-old boy with serious emotional problems including uncontrollable aggression and attention deficit hyperactivity disorder, did not want to be placed with his nonoffending, noncustodial father, Dewayne, because he "lived in the country" (Tennessee). (*Id.* at pp. 1568, 1570-1571.) Notwithstanding the social worker's concession she had no information suggesting Dewayne would be unable to meet John's special needs (*id.* at p. 1571), the juvenile court found it would be detrimental to place John with Dewayne based "on John's wishes, his need for services, his relationship with S.E.[, his 10-month-old sibling,] and members of his extended family in San Diego, his lack of relationship with Dewayne, the paucity of information about Dewayne, and [mother's] reunification plan" (*id.* at p. 1570). In holding this evidence—significantly more than the instant case—did not support the detriment finding by clear and convincing evidence, the *John M.* court explained in part, "While . . . [John] was entitled to have his wishes

6

considered, he was not entitled to decide where he would be placed." (*Ibid*.; see *In re Patrick S.* (2013) 218 Cal.App.4th 1254,1265 [although 13-year-old boy was "entitled to have his wishes considered[,] . . . a child's preference is not the deciding factor in a placement decision"].)[5] With respect to John's sibling bond with 10-month old S.E., Dewayne had been willing to facilitate visitation as H.G. is willing to do with Aria and her half-siblings. (*John M.*, at p. 1570.)

Indeed, *Luke M.*, *supra*, 107 Cal.App.4th 1412, on which Mother heavily relies, demonstrates much more is needed than Aria's preference, as expressed to Department personnel, to remain with her half-siblings. In *Luke M.* four children (Leanna, Luke, Lenay and Lindsey) were removed from their mother's care after she was arrested for drug possession. A social worker for the San Diego County Health and Human Services Department initially recommended the children be placed with their father, Jeffrey,[6] who was living in Ohio, because he was able to provide for them and there was an "extremely strong bond between the children, as evidenced by a . . . counselor's assessment that it would be detrimental to separate the children." (*Id.* at p. 1417.) After Lindsey, the youngest child, reunified with the mother in the treatment facility, the social worker recommended the other three children remain placed with their paternal aunt and uncle as the children had requested: "The social worker opined that, based on her four-month involvement in the case, the wishes of the children should be followed. She noted that the children are bonded to each other and become depressed when approached with the thought of being separated. Ever since they were removed from the mother, the children had repeatedly asked not to be separated. The children depended on each other for

---

[5]     As Mother correctly observes, *In re Patrick S.*, *supra*, 218 Cal.App.4th 1254 did not involve the separation of bonded siblings. Nevertheless, the fundamental point that a child's wishes will not alone dictate placement is applicable. The separation of siblings is just one potential cause of emotional harm to a child. The relevant consideration is whether the placement will impair the emotional security of the child, whatever its cause.

[6]     Jeffrey was the biological father of three of the children (Luke, Lenay and Lindsey) and de facto father of Leanna (the eldest), who viewed him as her biological father. (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1416.)

support, love and security. Noting that the mother had made great strides in her treatment, the social worker concluded moving the children to Ohio would be detrimental to them and would cut off the possibility of the mother reunifying as soon as possible." (*Id.* at p. 1418.)

After the court heard testimony from Luke, the social worker and Jeffrey, it ordered Lindsey placed with her mother in the treatment facility and Leanna placed with her aunt and uncle because "send[ing] her to Ohio would seriously impede her mother's ability to reunify with her." (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1419.) With respect to Luke and Lenay, the juvenile court found placing them "with Jeffrey in Ohio would be detrimental to their emotional well-being because of their significant bond with their siblings. The court observed 'the raw emotions and true sense of fear [of] separation from [his] siblings' when Luke testified, and emphasized 'the record would [not] come anywhere close to revealing the depth of that young man's reaction to the prospect of being separated.'" (*Ibid.*) In rejecting Jeffrey's argument substantial evidence did not support the juvenile court's detriment finding, the *Luke M.* court recognized, "Although a detriment finding may not be supportable based on [Luke's and Lenay's] preferences alone, at their respective ages of 10 and eight," their preferences—in part demonstrated by Luke's "demeanor," which was "critical" to the court's determination—in conjunction with opinions from the social worker and . . . counselor constituted sufficient evidence that separating the children would be detrimental. (*Id.* at pp. 1426-1427.)

In contrast, Aria did not testify nor did the social worker clearly state separating Aria from her half-siblings would cause her to suffer emotionally. Although the Department noted in conclusory terms Aria and her half-siblings were "extremely bonded" and recommended Aria not be separated, it is unclear whether the recommendation was based on anything more than Aria's adamancy; and, in any event, it fell far short of the powerful and persuasive assessment the social worker had provided in *Luke M.* (*Luke M.*, *supra,* 107 Cal.App.4th at p. 1427 ["Although the social worker here was not formally qualified as an expert, she had been working with these children for four and one-half months, had observed them together on multiple occasions, and had

8

frequently interviewed them. The social worker's interviews with and observations of the children and her ensuing opinion provided the court with sufficient information to render its ruling."].) On this record, we cannot say as a matter of law placing Aria with H.G. would be detrimental to her emotional well-being.

Finally, the court did not misunderstand the statutory scheme and fail to consider the sibling bond as Mother contends. Although the court may have "want[ed] to keep Aria together with the rest of the family," it was "hamstrung" because it could not do so absent clear and convincing evidence of detriment. As we have discussed, Aria's preference alone was not sufficient, and that is essentially what the court acknowledged when it commented it was to take "some heed as to [the children's] desires, but . . . they are not adults." Indeed, at the November 18, 2013 hearing, after noting H.G. had been located and the Department was beginning to assess him, the court first acknowledged the sibling bond was a factor to be considered when determining whether to place Aria with H.G.: "At this particular point it's really a best-interest issue, No. 1, to separate the child from her half-siblings when she is clearly bonded to them. I'm not particularly concerned if she said she wants to return to her mother at this particular point. But I am more concerned with the fact that in light of even if I take father at his words, there's still some bonding and some relationship that has to be rebuilt." The court then ordered visitation between Aria and H.G. This experienced dependency bench officer clearly understood the statutory scheme and concluded the Department had failed to meet its burden of proving at the January 22, 2014 hearing that separating Aria from her half-siblings would constitute sufficient determinant to warrant deviating from the statutory preference for placing a child with a nonoffending, noncustodial parent.

## DISPOSITION

The juvenile court order is affirmed.


                                        PERLUSS, P. J.

We concur:



        ZELON, J.



        SEGAL, J.*

---
\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.