Filed 8/7/20 Certified for Publication 8/28/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | B302248 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP05493) |
| Plaintiff and Respondent, | |
| v. | |
| C.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Thomas E. Grodin, Judge. Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court found placing 12-year-old Daughter out of state with her father would be detrimental to the child's emotional well-being. We affirm.

I

This dependency case started shortly after Daughter's half brother was born in August 2019. Both the half brother and Mother tested positive for amphetamine at the hospital. Within two weeks, the Department of Children and Family Services filed a juvenile dependency petition under section 300 of the Welfare and Institutions Code. All statutory references are to this code.

The Department alleged Mother's substance abuse endangered Daughter and her half brother and rendered Mother incapable of caring for them. Accordingly, the Department sought to remove the children from Mother and place them with their maternal grandmother. At the time, Daughter lived with Mother, an uncle, and other family members.

When the Department filed its petition, Daughter did not know her father. Daughter had not lived with him since she was a toddler. Mother said she and Father separated due to domestic violence. Father said he left because he and Mother were no longer getting along. He denied physically harming Mother. After leaving Mother and Daughter, Father had little contact with them and did not pay child support. Mother said Father stopped all contact years ago after she asked him for financial help buying a Christmas present for Daughter.

Mother and Daughter appeared before the juvenile court in August 2019. The court found a prima facie case for detaining Daughter and her half brother from Mother under section 300. The court ordered a multidisciplinary assessment of Daughter and ordered the Department to locate Father.

After locating Father, the Department interviewed him, Mother, Daughter, and others. Daughter also saw a therapist. She asked to speak with her father, and a social worker facilitated the call.

The Department's 2019 reports described the situation in the following terms.

Father lives in Washington State with his wife and seven-year-old son. He is self-employed and financially stable. Father wants a relationship with Daughter. According to Father's wife, Mother did not allow Father to see Daughter.

Daughter does not want to live with Father. She wants to visit him, but only on holidays or in the summer. Daughter sees Father as a stranger who could have reached out to her over the years but did not. She is uncomfortable being on her own with Father. Not knowing his family well also makes her uncomfortable.

Daughter is "strongly attached" to her half brother, enjoys caring for him, and does not want to leave him. She also has a "strong bond" with her maternal grandparents.

Daughter has many school friends and does not want to leave them. She enjoys school, has an A average, and is "very involved in achieving good grades."

Daughter is mature, insightful, and articulate. She is "able to express her wants and her needs." She can "advocate for herself."

Daughter and her half brother both are "thriving and developing as expected in an encouraging environment" with their maternal grandparents. Their grandmother facilitates daily visits with Mother and "demonstrated insight into the importance of children's needs such as a stable home and

supporting visits with [Mother]." Mother and her family are "very loving" toward Daughter.

Daughter fears leaving her mother, family, friends, school, and her life. She misses Mother significantly. She fears being placed with Father and "appeared anxious and troubled when [she] addressed the possibility of being placed with bio father." Daughter "has not been able to sleep due to being worried and anxious of possibly having to go reside with her estranged father."

The therapist who saw Daughter is concerned for Daughter's mental health. She concludes removing Daughter from her grandparents' home would "pose a considerable emotional strain for her" and would affect her academic stability. Further, placement with Father "without a proper reintegration process would be detrimental to her [ ] mental health and stability."

A multidisciplinary assessment team agreed placing Daughter with Father "would cause emotional detriment" to Daughter. The team concludes Daughter's "social-emotional needs are vulnerable." She is "at high risk of emotional deterioration." Daughter would benefit from continued mental health treatment.

The Department recommended reunification services and visitation for Father to build his relationship with Daughter. It also recommended an evaluation of Father's home under the Interstate Compact on the Placement of Children. (See generally *In re Suhey G.* (2013) 221 Cal.App.4th 732, 742–743.) The Department concluded releasing Daughter to Father would be emotionally detrimental to her.

4

Shortly before the disposition hearing, Father had a call with the multidisciplinary assessment team. On the call, Father acknowledged Daughter's need gradually to bond with him, and her need "to feel safe and secure that she will be reunifying with [Mother] so that [she] can continue to thrive." Father said he wanted Daughter to feel safe and protected, to stay with Mother, and to talk with him on the phone.

At the disposition hearing, Father's counsel switched position and argued Father was entitled to custody of Daughter under section 361.2, subdivision (a). Counsel maintained Father is nonoffending and has a good home; Daughter has a half sibling in Washington; and Daughter recently visited with his family and reported no concerns. According to Father, Mother kept Daughter from him. Father never sought court involvement before due to his immigration status. He now wants to make up for lost time.

Daughter's counsel asked that Daughter not be released to Father. Citing the therapist's report, counsel argued that release would be detrimental to Daughter's emotional well-being.

The juvenile court ultimately declared Daughter and her half brother dependents under section 300 and ordered them removed from Mother. The court also found it would be detrimental to place Daughter with Father. The hearing also addressed issues relating to the father of Daughter's half brother that are not relevant to this appeal.

Only Father appealed. The sole question is the propriety of the juvenile court's dispositional order denying placement of Daughter with Father.

## II

The dispositional order was proper. Substantial evidence supports the juvenile court's detriment finding.

Section 361.2, subdivision (a) requires a court ordering removal of a child first to determine whether there is a noncustodial parent who wants to assume custody. The court shall place the child with that parent, unless that placement would be detrimental to the child's safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a).)

Only clear and convincing evidence can establish the necessary detriment. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426 (*Luke M.*).) In making this finding, the court weighs all relevant factors to determine if the child will suffer net harm. (*Id.* at p. 1425.)

Our role is limited because our review of the juvenile court's detriment finding is deferential. (See *In re K.B.* (2015) 239 Cal.App.4th 972, 979.) We review the entire record in the light most favorable to the court's order to see whether substantial evidence supports the finding. (*Luke M.*, *supra*, 107 Cal.App.4th at p. 1426.)

## A

Father argues we must reverse the juvenile court because its detriment finding hinged entirely on one fact—the absence of a father-daughter relationship—which is a legally insufficient basis for rejecting placement with a noncustodial parent.

This is not a fair reading of the record. The juvenile court read and considered the Department's reports. The basis for its finding was Daughter would experience something akin to trauma should she be placed with Father. The court noted one of the Department's reports contained "very clear" information "that

6

it would be very, almost traumatic, for [Daughter] to have to face that kind of move, at her age." After making this finding, the court observed, "there is almost no relationship between the father and the child."

The absence of a relationship between Father and Daughter was a factor in the court's decision, as is permissible. (See *In re Abram L.* (2013) 219 Cal.App.4th 452, 464 (*Abram L.*).)

Father correctly argues Daughter's wishes are not dispositive. The juvenile court acknowledged this point. The child's wishes are, however, relevant. (*In re Adam H.* (2019) 43 Cal.App.5th 27, 33 (*Adam H.*).) The court was right to consider this factor.

B

Father's reply brief makes a different argument: that appellate courts have rejected the combination of factors at play here as insufficient to establish detriment under section 361.2. This argument is incorrect.

The evidence shows Daughter is strongly attached to her mother, half brother, and maternal family. They are loving. Daughter is thriving in her grandmother's home. She sees Mother daily and wants to reunify with her. She has many friends, enjoys school, and is excelling academically. Daughter does not want to leave this life and go live with Father. Daughter actually fears this prospect. He is a stranger to her. She has not heard from him in over five years. Her anxiety about residing with Father is consuming. She cannot sleep. Daughter's therapist concludes removing Daughter from her half brother and the only family she has known in this way would be detrimental to her mental health, affect her academic stability, and cause "considerable emotional strain." Daughter's attorney agreed.

7

This evidence amply supports the juvenile court's finding Daughter would suffer emotionally if placed with Father.

Father cites no analogous case. His authorities are consistent with our analysis here, as a brief review of them will demonstrate.

The adolescent John in *In re John M.* (2006) 141 Cal.App.4th 1564 was not clear about whether he wanted to live with his father in Tennessee. (*Id.* at pp. 1568, 1570.) No therapist recommended against the move. No evidence showed John was strongly attached to his baby sister or his extended family. (*Id.* at pp. 1568–1570.) *In re John M.* is no support for reversing the juvenile court here.

The same holds for *In re Patrick S.* (2013) 218 Cal.App.4th 1254 (*Patrick S.*). In that case, the boy P.S. and his mother left P.S.'s father, a Naval officer, when the boy was 11 months old. (*Id.* at pp. 1256–1257.) They moved from state to state, were homeless at times, and lacked a familial safety net. (*Ibid.*) The father searched for P.S. for years and paid child support every month for 11 years without knowing where his son was. (*Id.* at p. 1263.) In the interim, P.S. attended 13 different schools. (*Id.* at p. 1257.) At the time of the dependency proceedings, he was enrolled in home independent study and was living in a foster home. (*Ibid.*) P.S. had behavioral issues and no friends. (*Id.* at pp. 1257, 1259.) Before the disposition hearing, P.S. visited his father's home in Washington for several weeks and made some friends during the visit. (*Id.* at p. 1258.) P.S. was able to converse freely with his father after the visit. (*Ibid.*) At various points leading up to the disposition hearing, P.S. had differing perspectives about his father, saying he preferred living with him, was resigned to living with him, did not want to live with

8

him, and had anxiety about living with him.  (*Id.* at pp. 1258, 1260.)  To ease the transition and support his son, Father researched schooling options for P.S. in Washington, arranged individual and family therapy, joined a parenting class, and set up an internship with an architect for P.S., consistent with the boy's interests.  (*Id.* at p. 1260.)  The father also offered to facilitate contact and visitation with P.S.'s mother.  (*Ibid.*)  *In re Patrick S.* obviously is distinguishable.

*In re C.M.* (2014) 232 Cal.App.4th 1394 likewise involved an essentially different situation.  C.M. lived with her mother, half sibling, and maternal grandparents.  (*Id.* at pp. 1396–1397.)  Her father provided financial support and maintained a relationship with C.M.  (*Id.* at p. 1396.)  He talked to her on the phone frequently and saw her on weekends and some holidays.  (*Id* at p. 1397.)  C.M. enjoyed these visits.  (*Ibid.*)  C.M.'s mother, on the other hand, was verbally and physically abusive.  (*Ibid.*)  When her mother went to jail after a violent episode, C.M. stayed with her maternal grandparents.  (*Ibid.*)  They were in denial about the mother's problems.  (*Ibid.*)  While C.M.'s attorney wrote C.M. was terrified of being released to her father, C.M. maintained she wanted unmonitored weekend visits with him.  (*Id.* at p. 1398.)  She did not want to live with him, and she did not want a new home or a new school.  (*Ibid.*)  She also wanted to remain with her half sibling and grandparents.  (*Id.* at p. 1402.)  The opinion says nothing about the strength of these family bonds and notes the father offered to have C.M.'s sibling placed in his home as well.  (*Id.* at p. 1404.)

There are many distinctions between this case and C.M.'s situation.  C.M.'s father had an ongoing relationship with his daughter.  No mental health provider opined the girl would suffer

emotionally if she were placed with him. The prospect of living with him did not cause C.M. acute suffering. The father lived in the same state, so visitations with the girl's mother and other family would not require flying across the country. *In re C.M.* is consistent with our analysis.

Other cases Father cites are further afield.

The juvenile court in *In re Marquis D.* (1995) 38 Cal.App.4th 1813 failed to apply section 361.2, subdivision (a) and did not adequately explore whether placing the children with their father would be detrimental. (*Id.* at pp. 1816, 1825.) The same is true of *Adam H.*, *supra*, 43 Cal.App.5th at pp. 32–33, and *Abram L.*, *supra*, 219 Cal.App.4th at p. 461. *In re Karla C.* (2010) 186 Cal.App.4th 1236 is not instructive either. The pertinent portion of the opinion is unpublished. (*Id.* at p. 1260.)

C

Father contends the juvenile court's order should be reversed because he is a safe, fit, and nonoffending parent who wants custody of his daughter. Citing *Patrick S.*, *supra*, 218 Cal.App.4th at p. 1265, Father argues the standard of detriment is "very high" when the noncustodial parent is competent. Without discussing what this standard means, Father implies it was not met here.

Contrary to Father's arguments, the court's inquiry properly is more comprehensive than simply whether a child will be physically safe with a noncustodial parent or whether that parent has behaved badly. (See *Luke M.*, *supra*, 107 Cal.App.4th at pp. 1423, 1425.) A court properly may decline placement with a safe and nonoffending parent if that placement would be detrimental to the child's emotional well-being. (*Id.* at p. 1425; § 361.2, subd. (a); see also *In re C.C.* (2009) 172 Cal.App.4th 1481,

10

1490–1491 [court has broad discretion to evaluate child's emotional well-being; finding a placement would impair the child's emotional security may suffice in appropriate cases].)

There is substantial evidence Daughter would suffer significant emotional harm if she were forced to live with Father.

## DISPOSITION

We affirm.


WILEY, J.

We concur:


BIGELOW, P. J.


GRIMES, J.

Filed 8/28/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law.<br><br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>C.L.,<br><br>  Defendant and Appellant. | B302248<br><br>(Los Angeles County Super. Ct. No. 19CCJP05493)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION**<br><br>**[No change in judgment]** |

THE COURT:

The opinion filed in the above-entitled matter on August 7, 2020 was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports. It is so ordered.

_____

BIGELOW, P. J.　　　　GRIMES, J.　　　　WILEY, J.