Filed 12/7/23  Steven H. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEVEN H.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Respondent;<br><br>SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | A168556<br><br>(City & County of San Francisco Super. Ct. No. JD203291) |

Steven H. (Father) petitions under rule 8.452 of the California Rules of Court[1] to vacate the juvenile court's order setting a hearing under section 366.26 of the Welfare and Institutions Code[2] to select a permanent plan for his son (Minor).  Father contends he suffered from ineffective assistance of counsel because his attorney failed to assure that the court treated him as a noncustodial parent, and that the court failed to conduct a

---

[1]    All further rule references are to the California Rules of Court.

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

proper jurisdiction and disposition hearing on the supplemental dependency petition. We issued an order to show cause. For the reasons discussed below, we now deny Father's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2020, the San Francisco Human Services Agency (Agency) removed Minor from the care of his mother, A.S. (Mother), with whom he resided. The initial dependency petition alleged Mother was at risk of transience, was using methamphetamines, and was unable to provide for Minor, who was then three years old. The petition alleged Father had not made himself available as a parent, had not established paternity, and had not provided care or support for Minor when Mother was unable.

Prior to the jurisdiction hearing, the Agency made contact with Father, who resides in Texas. Father appeared remotely at an initial jurisdiction hearing in December 2020, during which the juvenile court appointed him counsel who did not object to Minor's detention.

The Agency's jurisdiction and disposition report indicated Father had visited Minor once on his first birthday but had no other visits since, and Minor did not know him. Father reported a conviction for possession of methamphetamine in 2010, but claimed no law enforcement contacts since. The Agency reported Minor was very attached to his older sister,[3] who lived with Minor in the same foster home, and both the resource parents and Minor's sister reported it would be devastating to separate them. In an addendum report, the Agency recommended reunification services for Mother and Father. The Agency noted it needed time to assess Father's parenting capacity as he had never parented a child, and also time to assess his living

---

[3] Minor's older sister has a different father, and she also was removed from Mother. This writ petition concerns only Minor and Father.

situation and employment.  The Agency's case plan objectives for Father were for him to demonstrate the willingness and ability to have custody of Minor by maintaining regular contact with him; engaging in progressive visitation with Minor so Minor could eventually transition to Father's care; maintaining a safe and stable home environment; and developing and using a support network to care for Minor if Father is unable to personally to do so.

At a combined jurisdiction and disposition hearing, the juvenile court elevated Father's status from biological to presumed father.  Father and Mother submitted to the allegations in an amended petition, which alleged in part that Father had not been part of Minor's life, and so failed to protect the child from Mother's abuse and neglect, but that he was now ready and willing to care for Minor.  Father and Mother also submitted to the Agency's recommended disposition, i.e., committing Minor to the care and custody of the Agency with reunification services to the parents.  The court found the allegations in the amended petition true, found return to parental custody would be detrimental to Minor, and declared Minor a dependent and committed him to the Agency's custody.  The court ordered supervised visitation for Father and directed that one or more visits be in person and paid for by the Agency given Father's residence in Texas.

The Agency filed a report preceding the six-month status review hearing, indicating Father visited with Minor in person in April and May but not in June, and participated in weekly virtual visits.  The Agency indicated Father had the support of his parents in South Carolina, and a sister in Texas.  Minor qualified for special education services and occupational therapy.  Mother was making progress in her recovery.  The Agency recommended six more months of reunification services.  In October 2021, the parties agreed to overnight visitation for Father.

At the six-month review hearing in November 2021, Father did not personally appear, but his attorney indicated Father was submitting on the recommendation of six additional months of reunification services. The court ordered additional reunification services after again finding Minor's return to his parents would create a substantial risk of detriment.

By April 2022, Minor was back in Mother's care. The juvenile court ordered that Mother receive family maintenance services and terminated reunification services for Father but ordered that he receive supportive services. Agency reports filed around this time indicated Father had visited with Minor in person three times, with one visit taking place for Thanksgiving 2021 in Texas. Father agreed that Minor could remain in Mother's care.

In October 2022, prior to the six-month review hearing, the Agency reported Mother relapsed in her drug use and stopped engaging in services. Meanwhile, Father's last in-person visit with Minor was in March 2022, but he had not responded to contact about virtual visitation and had not been very involved with Minor after Father's Day 2022. The Agency reported Minor still had issues requiring occupational and speech therapy. At the six-month family maintenance review hearing in November 2022, the Agency indicated it was arranging an in-person visit in Texas over the holidays. The juvenile court ordered Minor remain with Mother and continued her maintenance services.

In December 2022, the Agency filed a supplemental dependency petition pursuant to section 387 alleging the prior disposition had been ineffective because Mother was again using drugs and refused to engage in services. At a detention hearing, counsel for Father did not contest there were grounds for removal from Mother. But Father wanted custody of Minor

4

and said he would explore that going forward. The juvenile court detained Minor and his sibling, placing them with their maternal grandmother.

In January 2023, the Agency filed a report recommending termination of services for the parents and setting a section 366.26 hearing. The Agency reported the following. Father had been strongly encouraged to consistently visit Minor but that did not occur. Father said he would call Minor three days per week starting in December 2022, but he called only once in January for eight minutes. Father had not prioritized maintaining a consistent relationship with Minor—he had not seen Minor since March 2022 despite the fact that he could visit in person once a month and the Agency would pay for his flight and hotel, and he also did not engage in regular virtual visits. Father claimed he changed phones and lost access to those who could help him visit with Minor. The Agency noted Minor was still extremely attached to his sister, with whom he lived since being reunited with Mother.

In an addendum report, the Agency noted the infrequency with which Father attended virtual visits. The Agency also learned the maternal grandmother called Father in October 2020, prior to Minor's detention, told Father about Mother's drug use, and told him to pick-up Minor and protect him, but Father said he was unable to do so.

In March 2023, the juvenile court noted Father's visitation issues and said it was disinclined to give him any more chances, but the matter had to be continued due to outstanding discovery, so Father would get one last chance to have meaningful visitation. The Agency indicated it was willing to give Father one last chance with a four-to-six-week continuance. The court continued the matter to June 2023 to allow Father an extended April visit, and emphasized Father should engage in regular visits and phone calls with Minor.

The Agency filed an addendum report in mid-June 2023 noting Father's continued failure to engage in calls with Minor. In May 2023, Father arrived in San Francisco at 9:45 a.m. for an in-person visit, but he asked the social worker to drop Minor off at his hotel at 4:00 p.m. so he could have time without Minor. Father later took Minor to Texas for several days. When dropping Minor back off in California, Father's scheduled flight to Texas was not until the evening but he indicated he had "other important things to do prior to flying back to Texas and insisted [Minor] be picked up at 10:00 a.m. from the airport."

Father indicated his fiancé would be co-parenting and likely be Minor's primary caregiver if Father obtained custody. In the course of conducting a background check on the fiancé, the Agency conducted an updated background check on Father and discovered he suffered a misdemeanor conviction for driving while impaired (DWI) in Texas. Father denied the conviction but eventually admitted it after the Agency social worker spoke to the paternal grandfather.

In an addendum report, the Agency again recommended setting a section 366.26 hearing. The Agency noted the infrequency with which Father called Minor, his failure to attend virtual visits, and his failure to arrange any in-person visits with Minor in June or July 2023. The Department reported Father also failed to attend important meetings related to Minor's school or other services.

A contested detention hearing on the supplemental petition took place on August 1 and 16, 2023. On the first hearing date, Father was present but Mother was not. The Agency asked the juvenile court to find the allegation in the supplemental dependency petition true, and to proceed to a trial to

6

determine if Father's services should be terminated and a section 366.26 hearing set. Counsel for Father requested that Minor be put in Father's care.

The juvenile court admitted several Agency reports, sustained the allegation in the amended petition as to both children, and for purposes of disposition as to Mother, ordered the children removed from her care. When the court began to set a section 366.26 hearing as to Mother, Father's counsel asked the court to postpone making that order until Father's trial was complete. The Agency agreed to that request. The court proceeded to Father's trial.

The Agency called protective services worker (PSW) Gerber Marquez, who testified Minor was flourishing in his placement with his maternal grandmother and connecting with his maternal family. Minor was not being moved to Texas to be with Father because Father had not really developed a relationship with Minor or shown the capacity to parent Minor alone. Father did not regularly call or engage in visits with Minor, and his visits became less regular and less lengthy over time. After Minor reunified with Mother in April 2022, Father expressed concern the Agency was returning Minor to Mother who was a "drug addict," but Father thereafter had no contact with the Agency for months and the Agency could not get a hold of him.

Agency protective services supervisor (PSS) Kristina Pock testified as an expert in child safety social work as follows. For a period of approximately 31 months, the Agency offered to pay for Father's flights and hotels in San Francisco and arranged travel for him. The Agency wanted to encourage Father to establish a relationship with Minor, yet Father visited Minor only six times in person. There were long periods in which Father had no contact with Minor or the Agency. Pock testified she had been a social worker since 2007, and this was one of the "worst cases" she has had in terms of missed

visits. The Agency also had concerns when Father came to visit because Father would ask the Agency to pick Minor up early, or asked for free time, or called Mother for help with Minor. Pock testified both the paternal grandparents and Father's sister expressed concern about Father's ability to take responsibility over Minor and stated they would not be able to provide regular support if Father obtained custody. Pock believed it would be detrimental to return Minor to Father now given Father's pattern of neglect, lack of consistency visiting, lack of a support system, and his failure to build a relationship with Minor.

On the second hearing date, Father testified that Minor is his only child. He has limited vacation time at work and so has difficulty visiting Minor. He works 12-hour shifts and has limited break time and so has difficulty calling and getting a hold of Minor through the maternal grandmother. He also has to Uber when visiting, and paying for transportation and food for him and Minor took a "financial toll."

On rebuttal, PSW Marquez testified that Father's last recorded visit was in March 2022. Thereafter the Agency did not hear from Father until the end of September 2022, and the Agency had no record of Father visiting in August or September 2022, as he claimed. Marquez noted he placed Father at hotels near BART so Father would not have to use Uber. Father had not made any phone calls to Minor in the month of August 2023.

The parties gave closing arguments without Father present, as his connection to the hearing dropped in the middle of the Agency's rebuttal. The Agency, counsel for Minor, and Mother argued Minor should not be returned to Father. Ultimately, the juvenile court terminated Father's reunification services and set the matter for a section 366.26 hearing. Father filed a notice of appeal on August 18, 2023, and a notice of intent to file a writ petition on

8

August 25, 2023. Father then filed this writ petition and requested a stay of the pending section 366.26 hearing. We issued an order to show cause, but we did not issue a stay. Father filed a petition and the Agency filed opposition.

## DISCUSSION

### A. Timeliness

Preliminarily, we address whether Father timely filed a notice of intent (hereafter "notice of intent") to file a petition for an extraordinary writ.

"Ordinarily, a party seeking review of an order setting a section 366.26 hearing must file notice of intent to file a petition for extraordinary writ review within strict timeframes set forth in . . . rule 8.450(e)(4)." (*In re J.W.-P.* (2020) 54 Cal.App.5th 298, 305; § 366.26, subd. (*l*).) Rule 8.450(e)(4) provides: "(A) If the party was *present* at the hearing *when the court ordered a hearing under . . . section 366.26*, the notice of intent must be filed within 7 days after the date of the order setting the hearing. [¶] (B) If the party was notified of the order setting the hearing only by mail, the notice of intent must be filed within 12 days after the date the clerk mailed the notification. [¶] (C) If the party was notified of the order setting the hearing by mail, and the notice was mailed to an address outside California but within the United States, the notice of intent must be filed within 17 days after the date the clerk mailed the notification." (Italics added.)

In this case, the juvenile court set the section 366.26 hearing at the August 16, 2023 hearing. Father contends he was disconnected from that hearing when the court made its ruling and set the section 366.26 hearing, so the deadline to file a notice of intent was September 5, 2023,[4] the seventeenth

---

[4]    September 4, 2023 was a judicial holiday. (Gov. Code, § 6700; Code Civ. Proc., § 135.)

9

day after the court clerk sent a notice of intent to file a writ petition to Father. The Agency does not contend Father was present when the court made its order and does not object to a review of the merits of Father's contentions. Given the lack of dispute over Father's absence, we conclude Father timely filed his notice of intent.

### B. Ineffective Assistance of Counsel

An indigent parent in a dependency proceeding has a right to appointed counsel where a dependent child has been placed in out-of-home care or the petitioning agency recommends the child be placed in out-of-home care. (§ 317, subd. (b); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659.) In addition to the statutory right to counsel, "an indigent parent may in some cases have a due process right to counsel where the termination of parental rights may result." (*Kristin H.*, at p. 1659.) "All parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." (§ 317.5, subd. (a); *Kristin H.*, at p. 1659.)

"A parent seeking to establish ineffective assistance of counsel must show both that counsel failed to act in a manner to be expected of a reasonably competent attorney practicing in the field of juvenile dependency law, and that it is ' "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*In re M.F.* (2022) 74 Cal.App.5th 86, 108–109.)

In this case, Father claims he suffered from ineffective assistance of counsel (IAC) because he was a noncustodial parent, but his attorney allowed the juvenile court to treat him as a custodial parent and did not ask the court to assess Father's request for placement at the original disposition hearing and afterwards under section 361.2.

10

Section 361.2 provides: "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent *unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child.*" (§ 361.2, subd. (a), italics added.) If the court places the child with the noncustodial parent, the court may order that the parent become legal and physical custodian of the child and terminate jurisdiction over the child. (§ 361.2, subd. (b)(1).)

"The term 'custody' . . . refers to the parent's right to make decisions pertaining to the child and to have legal possession of the child. [Citation.] 'Placement' refers to the address where the child shall live during the dependency proceeding. [Citation.] Thus, under section 361.2, subdivision (a), the court examines whether it would be detrimental to temporarily place a child with the nonoffending noncustodial parent; under subdivision (b) of section 361.2, the court decides whether that placement should be permanent and whether the court's jurisdiction should be terminated." (*In re A.A.* (2012) 203 Cal.App.4th 597, 605 (*A.A.*).)

### 1. *Original disposition hearing*

With regard to Father's IAC claim that his attorney failed to invoke section 361.2 at the original disposition hearing, the Agency does not present any argument responding to the deficient performance prong of the claim. That said, we will briefly address that point.

"It is the noncustodial parent's *request* for custody that triggers application of section 361.2, subdivision (a); *where the noncustodial parent*

*makes no such request, the statute is not applicable.* [Citations.] Failure to object to noncompliance with section 361.2 in the lower court results in forfeiture." (*A.A., supra,* 203 Cal.App.4th at p. 605.) Section 361.2 contemplates *immediate* placement with a noncustodial parent. (§ 361.2, subds. (a), (b); *In re Zacharia D.* (1993) 6 Cal.4th 435, 454 (*Zacharia D.*) ["[Section 361.2] assumes the existence of a competent parent able to immediately assume custody"].)

In this case, the transcript of the March 2021 combined jurisdiction and disposition hearing does not show Father requested immediate custody such that counsel was ineffective in failing to invoke section 361.2. Instead, at that hearing, Father stipulated to the section 300, subdivision (b)(1) allegation against him, and further stipulated to the disposition that he would receive reunification services.

Father claims he "requested placement of [Minor] with him in Texas." His record citations, however, do not clearly show he communicated that request to his attorney, or reflect what transpired between Father and counsel leading Father to submit to the recommended disposition. Though the Agency reports show that Father indicated he wanted to *eventually* reunify and parent Minor, Father did not indicate he wanted *immediate* custody of Minor, with whom he had no relationship at the time. Absent evidence that he communicated a desire for immediate placement to counsel at the time of the original disposition hearing, Father cannot establish that counsel performed deficiently by not invoking section 361.2 at that hearing. (See *In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.)

Even assuming Father made the requisite communication and counsel performed deficiently by not invoking section 361.2 at the original disposition

hearing, it is not reasonably probable that a result more favorable to Father would have been reached absent the claimed omission.

As discussed, section 361.2 provides that the court shall place a child with a noncustodial parent "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) A finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence. (*In re A.C.* (2020) 54 Cal.App.5th 38, 43; cf. § 361, subd. (c); *In re S.F.* (2023) 91 Cal.App.5th 696, 720, fn. 14.)

We review a disposition order for substantial evidence. (*In re T.V.* (2013) 217 Cal.App.4th 126, 136.) Under this standard, "[w]e review the record in the light most favorable to the court's order to determine whether there is substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that placement would be detrimental to the child. Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262 (*Patrick S.*).)

At the combined jurisdiction and disposition hearing here, Father admitted the allegation under section 300, subdivision (b)(1), that he was not a part of Minor's life and that he failed to protect Minor from Mother's abuse and neglect. Father does not presently challenge the truth of this jurisdictional allegation, and other portions of the record confirm the true finding was warranted. For example, Agency reports show maternal family members informed Father of Mother's drug use and the environment Minor was in, and Father did not act to protect Minor.

Additionally, Agency reports show that at the time of the original disposition hearing, Minor did not know Father and the two had no

13

relationship. The Agency believed Father needed to establish a relationship with Minor so that Minor could safely transition to living with Father. The Agency also needed time to assess Father's living situation, housing, employment, and parenting ability, noting Father had reported he never parented a child before. Minor was exhibiting developmental delays: he had speech issues, was not potty trained, and had difficulty chewing and swallowing. Minor lived with his sister in the same foster home, where she had "assumed a primary caretaking role" for him. Minor was very attached to her and looked to her for consolation. Father could not care for both Minor and his sister, and the foster parents and Minor's sister stated it would be "devastating" for the two to be separated.

Father contends he was prejudiced because "the only bases for the [A]gency's recommendation that [Minor] not be returned to Father's custody at the original disposition hearing" were "that the agency had no information about Father's ability to parent and that he and [Minor] did not have an established relationship." Relying on *In re Abram L.* (2013) 219 Cal.App.4th 452 (*Abram L.*) and *Patrick S.*, *supra*, 218 Cal.App.4th 1254, Father argues "[t]he lack of a relationship between the noncustodial parent and child cannot constitute substantial evidence of detriment." He also relies on *In re Z.K.* (2011) 201 Cal.App.4th 51 (*Z.K.*) for the proposition that " 'any lack of information' about the noncustodial parent cannot constitute substantial evidence of detriment." We are unpersuaded.

First of all, it is unclear why the bases for the Agency's placement recommendation at the original disposition hearing should control the prejudice analysis. In any event, the Agency reports indicate its recommendation was not based solely on the two identified matters. Rather, the Agency relied on a combination of those and several other factors to

14

support its recommendation, i.e., the lack of relationship between Father and Minor; Father's lack of parenting experience; the Agency's need for time to fully assess Father's living situation, employment, and parenting ability; and the detriment that separation from Minor's sister would cause. Though Father points to a later Agency report indicating that a Texas child protective services agency had assessed Father's home and found it appropriate, the cited report does not clearly reflect that the home assessment had been completed or available at the time of the original disposition. Nor was there any indication that an assessment of Father's employment or parenting ability had been completed.

None of Father's authorities supports his claim of prejudice. *Abram L.* indicates that "an alleged lack of a relationship between father and the children is not, *by itself*, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a)." (*Abram L.*, *supra*, 219 Cal.App.4th at p. 464, italics added.) But *Abram L.* does not suggest that lack of a relationship cannot be considered among the reasons for a detriment finding. Indeed, other portions of Father's writ petition appear to acknowledge it is a permissible consideration.

In *Abram L.*, the Court of Appeal remanded the case to the juvenile court to make an express finding of detriment under section 361.2. (*Abram L.*, *supra*, 219 Cal.App.4th at p. 455.) But there, "Father . . . was not a stranger to the children. Abram and Jacob had visited father every other Saturday for many years. Moreover, an alleged lack of a relationship between father and the children is not, by itself, sufficient to support a finding of detriment for purposes of section 361.2, subdivision (a)." (*Id.* at pp. 455, 464.) In contrast with *Abram L.*, this case involved a three-year-old boy to whom Father was a stranger.

15

The facts of *Patrick S.*, *supra*, 218 Cal.App.4th 1254 bear no resemblance to the facts here. *Patrick S.* involved a father who sought custody of a 14-year-old, and the Court of Appeal found no substantial evidence to support the trial court's detriment finding. (*Patrick S.*, at pp. 1256, 1263–1265.) The appellate court observed, among other things, that the father "paid child support every month for 11 years without knowing where his son was. He searched for him for years. When he learned of his son's whereabouts, [the father] immediately came forward and requested placement, attended all significant hearings in the dependency proceedings, visited and contacted his son whenever possible, looked into obtaining recommended services for [the child] and his family through the Navy and his church, and participated in recommended services." (*Id.* at p. 1263.) There, the record left no doubt the father was a fit and competent parent with no risk factors in his home. (*Ibid.*) By contrast, the record here indicates that Father had not developed a relationship with his son and that he neglected to assist or protect Minor when he knew Mother was putting Minor at risk. The situation here presents no parallel to that in *Patrick S.* (See also *Z.K.*, *supra*, 201 Cal.App.4th at p. 66 [finding no substantial evidence in the record to support an implied detriment finding].)

In sum, Father has not established IAC at the original disposition hearing.

### 2. *After the original disposition hearing*

Father contends his attorney's incompetence in failing to invoke section 361.2 continued at the hearing on the supplemental petition. Again, we address the deficient performance prong of this IAC claim, though the Agency did not.

In *Zacharia D.*, *supra*, 6 Cal.4th 435, the California Supreme Court examined section 361.2 and concluded: "Nothing in this statute suggests that custody must be immediately awarded to a noncustodial parent regardless of when in the dependency process the parent comes forward. Rather, *its language suggests that the statute is applicable only at the time the child is first removed from the custodial parent or guardian's home.* Our interpretation is reinforced by the absence of a similar provision requiring return of the child to a noncustodial parent in the statutes governing the 6-, 12-, and 18-month review hearings." (*Zacharia D.*, at pp. 453–454, italics added.)

"Despite the statute's plain language and our Supreme Court's admonition that the statute applies only at disposition," at least two cases have applied section 361.2 to a noncustodial parent's requests for custody *after* the original disposition phase of the dependency proceeding. (*In re Liam L.* (2015) 240 Cal.App.4th 1068, 1082, citing *In re Jonathan P.* (2014) 226 Cal.App.4th 1240 and *In re Suhey G.* (2013) 221 Cal.App.4th 732 (*Suhey G.*).) Father relies on *Jonathan P.* and *Suhey G.*, but they are distinguishable. These cases involve fathers who appeared for the first time after disposition because the child welfare department failed to provide proper notice of the dependency proceedings. (*Suhey G.*, at pp. 743–745; *Jonathan P.*, at pp. 1254–1255.) Here, Father appeared in December 2020, prior to the original disposition hearing. Father also appeared at the combined jurisdiction and disposition hearing, where he stipulated to the section 300, subdivision (b)(1), allegation against him and also stipulated to the disposition that he would receive reunification services.[5]

---

[5]     *Suhey G.* indicates the same rules of court applicable to disposition hearings on a dependency petition filed under section 300—including a rule contemplating section 361.2's application at disposition hearing—govern a

17

The Agency—in conclusory fashion—concedes that section 361.2 should apply at the hearing on the supplemental petition in this case. The Agency, however, does not explain the basis for this concession, much less cite any supporting authority. In any event, even assuming Father's attorney performed deficiently by failing to invoke section 361.2 after the original disposition hearing, no prejudice appears.

First of all, Father acquiesced to the return of custody to Mother in April 2022. Father told the Agency he was not trying to separate Minor and Mother, but only seeking to prevent Minor from being in foster care. Considering Mother regained custody in 2022 with no objection by Father, Father is hard pressed to show he was prejudiced by a failure to invoke section 361.2 to obtain custody up to that point in time.

Furthermore, at the August 2023 hearings on the supplemental petition, the juvenile court considered whether Minor should be returned to Father or whether a section 366.26 hearing should be set. Disagreeing with Father's contention that the Agency failed to prove detriment, the court made a finding that the return of Minor to Father would create a substantial risk of detriment to the safety, protection, emotional, or physical well-being of Minor, adopting the argument of Minor's counsel and the Agency's counsel.

Among other things, the juvenile court observed that although Minor loves Father, Father failed to show the ability to parent Minor. Father missed Minor's "IEP" meetings and his child and family team meetings

disposition hearing on a supplemental petition filed under section 387. (*Suhey G.*, *supra*, 221 Cal.App.4th at p. 741, fn. 20.) But given its later discussion of *Zacharia D.* and its emphasis on the fact that the child welfare department failed to properly serve the father with notice of the proceedings, this footnote cannot be read as a blanket statement that section 361.2 should apply at all disposition hearings on supplemental petitions. (*Suhey G.*, at pp. 743–744.) Father does not argue otherwise.

(CFTs), spent little time with Minor and did not seem to put Minor's interests before his own. Despite the Agency bending over backwards to provide in-person visits and arrange Father's travel, Father visited Minor in person only six times over the roughly 31-month course of the case. During some visits, Father sought free time for himself and did not want to be with Minor. Moreover, despite the Agency's accommodating Father, per PSS Pock, this was one of the worst cases she had seen of a parent missing visits with a child. Father's own parents did not believe Father should parent Minor, and the court expressed concern that Father would not be able to parent Minor given that he works 10 to 12 hours each day. The court noted that Father was dishonest about his DWI conviction, as were many other aspects of his testimony.

The evidence at the August 2023 hearings substantially supports the juvenile court's conclusion to the degree of high probability demanded by the clear and convincing standard. The Agency reports introduced into evidence and the testimony of the Agency's witnesses amply support the conclusion that Father failed to adequately engage in visitation with Minor, did not even regularly call or engage in virtual visits, and also bolstered concerns about Father's ability to parent this young child. There was evidence that Father failed to protect Minor before the dependency case began, and then had no contact with Minor or the Agency for months after Minor reunified with Mother in 2022, despite expressing concern the Agency was returning Minor to a "drug addict." The reports also showed that Minor was extremely attached to his sister, who was living with Minor in the home of maternal grandmother, their resource parent, and that he was flourishing. Pock specifically testified it would be detrimental to return Minor to Father given

19

Father's pattern of neglect and lack of consistent visitation, his lack of support system, and his failure to build a relationship with Minor.

Given the evidence presented at the August 2023 hearings, and the juvenile court's stated reasons for its decision, including its credibility determination as to Father's testimony, it is not reasonably probable that Father would have obtained a more favorable result had counsel invoked section 361.2 and the court applied it.

As above, Father argues the only two bases for the Agency's placement recommendation at the hearing on the section 387 petition were that there was no information about Father's parenting ability, and he and Minor had no substantial relationship. Again, the purported bases for the Agency's recommendation does not control the analysis of whether the alleged deficient performance was prejudicial. In any event, to the extent Father claims there was no information about his parenting ability, this is incorrect. The evidence at the August hearings, including Father's own testimony which the juvenile court essentially found lacked any credibility, was sufficient to establish rational concerns about Father's ability to parent a young child.

Father also suggests there could be no grounds for a detriment finding because at the time of the hearing on the supplemental petition, he had unsupervised overnight visits with Minor. But the fact that Father was allowed unsupervised visits does not preclude a finding of detriment under section 361.2.

In sum, Father has not established his IAC claim.

### C. The manner in which the juvenile court conducted the hearing on the supplemental petition

Father next argues the juvenile court erred in the manner it conducted the hearing on the supplemental petition. He argues proceedings on a supplemental petition must be conducted like proceedings on a section 300

original petition with a bifurcated jurisdiction and disposition phase. He claims the court erred because it did not make a finding on the allegation in the supplemental petition, did not make a finding that Minor's placement with Mother was ineffective, did not order Minor removed from Mother's custody or terminate the prior order returning Minor to Mother's custody, and did not make findings regarding placement with Father pursuant to section 361.2. Instead, as to Father, the court made findings required for an out of home review hearing.

This claim was forfeited. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) Father did not object to the procedures the court followed or the findings it made.

Though we find the claim forfeited, we note a supplemental petition is used to secure removal of a child from the physical custody of a parent where "the previous disposition has not been effective in the rehabilitation or protection of the child." (§ 387, subds. (a)–(b); Rule 5.560(c); *In re John V.* (1992) 5 Cal.App.4th 1201, 1211 [a supplemental petition under section 387 need not allege new jurisdictional facts, or urge different or additional grounds for dependency, because a basis for juvenile court jurisdiction already exists].) Father's claim that the court erroneously found the allegation in the supplemental petition true without finding that the prior disposition was ineffective is without merit. As the Agency points out, the allegation in the supplemental petition that the court found true included the language: "The previous disposition has not been effective in the protection or rehabilitation of the child." Moreover, Father fails to allege any prejudice as to this claim and, on this record, we discern none since there was no dispute that Mother had relapsed and stopped engaging in services and the prior

21

disposition had not been effective in protecting Minor. (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 (*J.S.*) [applying *Watson* standard of harmless error].)

As for Father's claims concerning findings the court should have but did not make, or that it mistakenly made, we have already found no reasonable probability of a more favorable outcome had Father invoked section 361.2 at the August 2023 hearings, and Father fails to allege any prejudice as to the other findings he claims the court should have made, or mistakenly made. (*J.S.*, *supra*, 196 Cal.App.4th at p. 1078.)

### D. Father's motion to consolidate

Contemporaneously with his notice of intent to file a writ after the August 2023 hearing setting the section 366.26 hearing, Father also filed a notice of appeal. Later, he filed a motion to consolidate this writ matter with that appeal, case no. A168544. Father filed no separate opening brief in that appellate matter, and instead filed this writ petition under both case numbers. The records in both cases are materially identical. As we have reached the merits of Father's claims in this writ proceeding, we discern no reason to consolidate the matters and so hereby deny the motion to consolidate. By separate order filed contemporaneously with this opinion, we will dismiss the appeal as abandoned. (*Doran v. White* (1961) 196 Cal.App.2d 676, 677.)

### DISPOSITION

The petition for extraordinary writ is denied on the merits. The decision is final in this court immediately. (Rules 8.452(i) & 8.490(b)(2)(A).)

22

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.


*S.H. v. Sup Co. City & Co. S.F.* (A168556)

23