Filed 7/30/24  In re Z.J. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re Z.J., a Person Coming Under the Juvenile Court Law. | C099834 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.C.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD236296) |

Appellant L.C. (mother), mother of minor Z.J., appeals from the juvenile court's dispositional order.  (Welf. & Inst. Code, §§ 361, 395; further undesignated statutory references are to the Welfare and Institutions Code.)  Mother contends there was insufficient evidence to support the juvenile court's order removing Z.J. from her custody because she had made improvements at the time of disposition and Z.J. did not feel safe in foster care.  We conclude substantial evidence supports the juvenile court's dispositional order and affirm.

1

# BACKGROUND

## A. Prior Dependency Involvement

Mother and Z.J. have a lengthy dependency history with respondent Sacramento County Department of Child, Family and Adult Services (Department). In July 2009, mother and Z.J. tested positive for methamphetamine at Z.J.'s birth; mother was offered and accepted informal supervision services from the Department, including alcohol and drug assessment and treatment, and early intervention family drug court. The informal supervision case was closed in September 2009. In 2013, a referral for sexual abuse was substantiated after a roommate sexually abused Z.J. while in mother's care.

In 2015, mother was arrested for passing bad checks and Z.J. was placed in protective custody; the juvenile court later sustained a dependency petition and removed Z.J. from mother's care. The juvenile court ordered mother to participate in services, including drug testing and alcohol and drug services, and ordered mother into dependency drug court. Z.J. was placed back with mother in October 2016 under a plan of dependent supervision but was detained again in December 2016 due in part to mother's untreated substance abuse issues with multiple positive drug tests for methamphetamine. Z.J. was adjudged a dependent child and removed from mother in February 2017, and the juvenile court ordered reunification services for mother including drug testing and treatment. In October 2017, the juvenile court returned Z.J. to mother's care under a plan of dependent supervision and family maintenance services. Mother completed services and the juvenile court terminated dependency jurisdiction in December 2017.

## B. Current Dependency Petition

In July 2023, the Department filed the present dependency petition pursuant to section 300, subdivision (d) on behalf of then-13-year-old Z.J., alleging that Z.J. had been sexually abused or was at substantial risk of being sexually abused by two men, H.H. and S.P., who resided in mother's home. Mother allegedly knew or reasonably should have

known that Z.J. was in danger of sexual abuse because in June 2023, Z.J. had disclosed the abuse to mother and mother developed a safety plan with Child Protective Services wherein she agreed to maintain a separate residence from H.H. and S.P. Contrary to the safety plan, in July 2023 mother and Z.J. returned to the residence they shared with S.P., who still had a key and access to the residence; that same month H.H., who had since moved out, came to the home while Z.J. was home alone and attempted to break into the home to retrieve his belongings.

According to the detention report, mother let H.H. and S.P. move in after they were released from jail, and she was having a casual sexual relationship with both men during the time Z.J. was sexually abused. The Department recommended Z.J. be detained because mother was unable to protect Z.J. from sexual abuse and the threat of future victimization as mother was likely to allow continued contact between Z.J. and the perpetrators.

Z.J. reported in a special assault forensic evaluation interview that in April 2023 she had been in bed next to her mother, who was asleep, when H.H. began rubbing Z.J. all over and forced her to orally copulate him. Z.J. eventually got up and went to her bedroom. H.H. followed and pulled down her pants and penetrated her vagina from behind. S.P. came into the room and put his penis in her mouth while H.H. continued to vaginally rape her. The two men later switched positions and continued the sexual assault. The following day, Z.J. woke up to H.H. putting his penis into her vagina. H.H. and S.P. forced her to orally copulate them on several occasions after the initial sexual assault until she reported the abuse in June 2023. Each instance of abuse occurred while mother was sleeping; according to Z.J., mother often stayed awake for days at a time and then slept for long periods of time, which Z.J. characterized as "insomnia."

Z.J. also reported that while living in the family home, H.H. asked Z.J. if she wanted to make some money, which she understood to mean engage in prostitution; he had previously brought a woman over to the house who Z.J. believed to be a prostitute.

3

Given prior substantiated claims of sexual abuse in 2013 and because H.H. had brought a prostitute to the home and propositioned Z.J. about making money, law enforcement was concerned that Z.J. was at a very high risk of being sex trafficked.

At an initial hearing on July 13, 2023,[1] the juvenile court considered the detention report and found that while Z.J. came within section 300, continuing her in mother's care was not contrary to her welfare because there were available services that would prevent the need for further detention. The juvenile court released Z.J. to mother with reunification services and ordered mother to obtain a restraining order against H.H. and S.P.

C.       *First Amended Dependency Petition*

A week later, the Department filed a first amended petition adding allegations under section 300, subdivision (b) (failure to protect) based on mother's inability to provide regular care due to substance abuse issues. The amended petition alleged mother had abused methamphetamine since at least 2009 when Z.J. was born and tested positive for the drug. Despite receiving numerous drug treatment services over the ensuing years, mother had failed or refused to rehabilitate from her substance abuse problem. On July 12, 2023, mother was unable to produce a urine sample when directed to drug test and an oral sample that was collected tested presumptive positive for amphetamine (with no prescription on file), methamphetamine, and THC.

During an interview on July 18, 2023, mother denied using any substances other than marijuana and informed the social worker that, contrary to the juvenile court's order directing her to do so, she had not filed for a restraining order against the men who had sexually assaulted Z.J. The social worker created a safety plan that included, among other things, mother changing the locks to the home, filing for a restraining order, and

_____

[1] At the hearing, the juvenile court found L.J. to be an adjudicated father. L.J. was not involved in the proceedings below and is not a party to this appeal.

4

providing proof of having done both. Z.J. told the social worker that she wanted to remain with mother and that the sexual abuse was a mistake and not mother's fault.

In a July 2023 report in "Furtherance of Detention," the Department again recommended the juvenile court detain Z.J. pending a jurisdiction/disposition hearing. The report noted mother had tested positive for methamphetamine on July 12 and July 19, although she continued to deny using the drug. She informed the social worker that she had filed for the restraining orders but did not pick them up from the issuing court. Mother would not agree to another safety plan regarding her methamphetamine use, in part because she denied she had a substance abuse issue. She showed proof that she had changed the locks to the home.

At a subsequent hearing on July 24, 2023, the Department argued that mother's methamphetamine use explained the "unusual circumstance" that she did not wake up when Z.J. was first sexually assaulted while lying next to mother in bed. Mother's counsel and counsel for Z.J. objected to detention, arguing Z.J. felt safe in mother's care, had never seen her take drugs, wanted to remain with mother, and that mother was meeting Z.J.'s needs.

The juvenile court found "a nexus" between mother's substance abuse problem and the sexual abuse Z.J. suffered while mother slept. The court found that reasonable efforts had been made to prevent or eliminate the need to remove Z.J. from mother's custody but that continued custody was contrary to Z.J.'s welfare and detained her in foster care. Mother responded that the court's actions were "crazy" and "fucking bullshit." She asserted that while she had made a mistake in trying to be too nice to the men by allowing them into her home, she had reported the abuse and had not really done anything wrong.

The Department's August 17, 2023, jurisdiction/disposition report recommended the juvenile court sustain the amended petition, adjudge Z.J. a dependent child, remove her from mother's custody, and offer mother reunification services even though Z.J.

5

reported that she felt safe and wanted to remain with mother. According to the report, mother had four positive drug tests throughout July and August even though she continued to deny using, and had attempted to dilute urine samples or failed to provide samples when required. Mother claimed the positive drug tests might have been caused by her use of over-the-counter allergy pills. The report further noted that the Department had received a report that mother gave Z.J. marijuana and vape pens during an unauthorized visit and was overheard discussing getting money from a man whom Z.J. later communicated with online to arrange a meeting.

Mother disputed the reported allegations. Although mother acknowledged using poor judgment in allowing H.H. and S.P. into her home, whom she admitted she only knew " 'a little bit,' " she disagreed that the men were "part of her household" or that they were living there at the time Z.J. was sexually assaulted (even though the safety plan mother signed described the men as "roommates"). She noted she had sought a restraining order against the men and had changed the door locks on her home.

At a hearing on August 24, 2023, mother's counsel stated mother understood that to have the juvenile court return Z.J. to her care, mother had to submit to weekly urinalysis testing until September 14, 2023. Should she test positive during that time, a contested jurisdiction/disposition hearing would be set; if she tested negative, the juvenile court was likely, although not guaranteed, to return Z.J. to mother's custody. The court agreed that if mother tested negative and everything appeared appropriate, it was open to returning Z.J. to mother.

A September 2023 addendum report recommended continued out-of-home placement given the Department's concerns regarding mother's drug use and her inability and/or unwillingness to engage in consistent drug testing to monitor her use. While mother had attended and actively participated in all scheduled counseling sessions in August 2023, she failed to drug test three times and had one negative test. Mother attended outpatient recovery services and her substance abuse counselor reported she was

6

doing well in her recovery. Visits with Z.J. were inconsistent because Z.J. would frequently disappear from the foster home without telling anyone; while unaccounted for, Z.J. would engage in dangerous behaviors like meeting up with older men for sexual activities.

At a continued hearing on September 28, 2023, the juvenile court requested more information about a September 12 presumptive positive drug test by mother. Mother explained that she was still engaged in her services, including classes for parenting, alcohol and substance abuse, and domestic violence; she was about to start a parenting class for teenagers. She claimed she was unaware she had tested positive. Z.J.'s counsel requested a change in placement because Z.J. did not feel safe in the foster home where she was placed.

A second addendum report filed in October 2023 continued to recommend out-of-home placement due, in part, to mother's continued drug use. The report stated that mother had attended nine counseling sessions and had actively participated in the sessions. On August 30 and September 8, mother failed to drug test. On September 12, she was unable to produce a urine sample and an oral swab tested positive for methamphetamine, amphetamine, and THC, which was later confirmed in a lab. Mother tested negative for all substances on September 20 and September 28. Mother was unable to produce a urine sample on October 3, and an oral swab tested positive for amphetamine; the sample was subsequently sent to a lab for confirmation.

Mother's substance abuse counselor reported that she had regressed in her outpatient drug treatment by not regularly attending her sessions, passing blame, and failing to take accountability. According to the counselor, mother appeared to be in denial and stated that " 'none of this' " is due to her drug use. The counselor recommended a higher level of treatment such as a residential treatment program. As Z.J. continued to disappear from the foster home for lengthy periods of time, a short-term

7

residential therapeutic placement specializing in treating commercially sexually exploited children was recommended.

At a hearing on October 12, 2023, the juvenile court granted mother's request for an order to participate in dependency family treatment court prior to disposition. The juvenile court indicated that although mother had had another positive drug test, it would still be open to returning Z.J. to mother's care if she tested clean for a month and were in a structured drug program.

A third addendum report filed October 23, 2023, noted that mother tested positive for amphetamine, methamphetamine, and marijuana on October 3, and she failed to test on October 12. The Department's recommendations remained the same.

D.    *Jurisdiction and Disposition Hearing*

In a combined jurisdiction and disposition hearing in October 2023, the parties argued and submitted the matter, without witness testimony, based on the Department's reports and an admitted drug treatment intake form mother had signed that month acknowledging that she had ingested methamphetamine. The Department urged the juvenile court to sustain the amended petition, remove Z.J. from mother's care, and provide mother with services. The Department noted mother's lengthy substance abuse history and prior dependency matters as well as her multiple positive methamphetamine tests, the last of which she finally admitted to using methamphetamine. Counsel pointed out that mother had violated the safety plan after the sexual abuse was first disclosed by returning Z.J. to the home where the assaults occurred; one of the perpetrators showed up at the house while Z.J. was there alone and tried to violently break into the house, putting Z.J. in substantial danger. Counsel also argued that there was a nexus between mother's substance abuse and the initial sexual abuse allegations because mother was essentially passed out in her bed while her daughter was being raped next to her and she did not wake up.

8

Minor's counsel submitted on jurisdiction but argued that Z.J. should be returned to mother with services. Counsel noted the strong bond between mother and Z.J

Mother objected to jurisdiction and removal, arguing that Z.J.'s current out-of-home placement was unreasonable under the unique circumstances of this case and that it placed her in more danger than when she was with mother. Mother emphasized her strong bond with Z.J. and argued that retaining jurisdiction but allowing Z.J. to reside with mother would be in Z.J.'s best interest. Counsel asserted that while the case originated due to sexual abuse, Z.J. had experienced sexual abuse in her out-of-home placement under the Department's care. According to counsel, mother was supposed to enter a sober living center where Z.J. might be able to stay with her.

In rebuttal, the Department argued there was no evidence before the court that Z.J. was worse off in out-of-home placement than in mother's care or had been sexually abused in her placement. Mother, while making some progress, was not yet equipped to care for Z.J. and protect her safety, welfare, or her emotional and physical well-being

The juvenile court sustained the amended section 300 petition, adjudged Z.J. a dependent child, removed her from mother's custody and placed her with the Department, and ordered reunification services to mother. It found mother had made fair progress to alleviate or mitigate issues necessitating placement but, nonetheless, found by clear and convincing evidence that there was a substantial danger to Z.J.'s physical health, safety, protection or physical or emotional well-being, or would be if she were returned home, and that there were no reasonable means by which her health and safety could be protected without removal from mother's physical custody. In making its findings, the juvenile court noted that, while there was evidence that Z.J. had been physically attacked one time in out-of-home placement, there was no evidence before the court that she had been sexually abused after being detained from mother or that she was worse off with removal.

9

Mother timely appealed.  This matter was fully briefed in this court on May 21, 2024.

## DISCUSSION

Mother contends there was insufficient evidence to support the juvenile court's dispositional order removing Z.J. from her custody.  She claims there was no evidence to support a finding that Z.J. would be at substantial risk of harm if returned to mother's care or that there were no reasonable means to protect the minor short of removal.  We disagree.

## I

### *Applicable Legal Principles*

Section 361 provides in pertinent part that a dependent child "shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence . . . [¶] [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . . "  (§ 361, subd. (c)(1); *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B.* (2018) 26 Cal.App.5th 320, 332; accord, *In re I.R.* (2021) 61 Cal.App.5th 510, 520.)  "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.  [Citation.]  The parent need not be dangerous and the minor need not have been harmed before removal is appropriate.  The

10

focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462 [applying § 361, subd. (c) within the context of a § 387 removal].) When reviewing removal findings, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239, italics omitted; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.) We draw all reasonable inferences from the evidence to support the findings and orders of the juvenile court, noting that issues of fact and credibility are the province of the court below. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We may not disturb the juvenile court's finding, so long as "it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the [juvenile] court might have reached a different result had it believed other evidence." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

## II

### *Substantial Evidence Supports the Minor's Removal*

Mother argues the juvenile court erred in removing Z.J. because circumstances had significantly changed between the time of the referral and the disposition hearing. She contends that she had made sufficient progress in her services to address any potential protective issues regarding Z.J, noting the abusers were out of the home, she had obtained restraining orders against them and changed the locks, and she was participating in therapy sessions. Although she finally admitted suffering from substance abuse issues, she was willing to participate in additional services.

11

Although mother has now made an effort to protect Z.J. from H.H. and S.P. and has engaged in some services, substantial evidence still supports the trial court's finding by clear and convincing evidence that removal was warranted. There was significant evidence that, despite having made "fair" progress in her services, mother still presented a substantial danger to Z.J.'s safety at disposition.

Mother's past conduct, which mother acknowledges could be considered by the juvenile court, included her persistent and untreated substance abuse and exposing Z.J. to the risk of repeated sexual abuse. (*In re D.B.*, *supra*, 26 Cal.App.5th at p. 332; *In re I.R.*, *supra*, 61 Cal.App.5th at p. 520.) The juvenile court could reasonably conclude that mother has abused methamphetamine since at least 2009 when Z.J. tested positive for the drug at her birth. While in mother's care in 2013, Z.J. was sexually abused by a different roommate. Throughout all this time, mother's long-standing substance abuse issues continued despite receiving services.

In the present case, Z.J. reported being sexually assaulted by H.H. while mother was asleep in the same bed next to her. Z.J. said mother often would sleep for days, which, as the Department's counsel pointed out after mother tested positive for methamphetamine in July 2023, was consistent with substance abuse. It was mother's decision to allow two men who she barely knew to move into, or at least stay, in the home where they had unfettered access to Z.J. while mother was under the influence and unable to protect her. After the abuse was reported and mother and the Department formulated a safety plan, mother knowingly violated the plan by returning Z.J. to the home when at least one of the perpetrators still lived there and had a key to the house, placing her at risk of further assault. Mother, moreover, continually shifted blame for the dangerous circumstances she created for Z.J.

Furthermore, despite numerous positive or missed or diluted drug tests, mother continued to deny using methamphetamine until shortly before the contested disposition hearing, and she failed to recognize how her untreated substance abuse jeopardized Z.J.'s

12

safety and well-being and refused to take full responsibility for the outcome—the repeated rape and sexual abuse of her child. In fact, when the above was pointed out by the juvenile court, mother asserted the court's assessment was "crazy" and "fucking bullshit." Similarly, mother's drug counselor reported that mother was *regressing in her services*, not taking responsibility, and blaming others, which was consistent with her comments to the juvenile court deflecting blame. Considering mother's past conduct and current circumstances, and her response to the conditions that gave rise to juvenile court intervention (*In re D.B.*, *supra*, 26 Cal.App.5th at p. 332), there was substantial evidence of a substantial danger to the physical health, safety, protection, and physical or emotional well-being of Z.J. if she were returned to mother. (§ 361, subd. (c)(1); *In re Heather A.*, *supra*, 52 Cal.App.4th at p. 193.)

The fact that Z.J. preferred to stay with mother does not dictate a different result. While her wishes were a consideration, she was not entitled to decide where she would be placed. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 464.)

There also was substantial evidence that there were no reasonable means by which Z.J.'s physical health could be protected without removing her from mother. As previously discussed, the juvenile court initially tried to maintain Z.J. in mother's care after the sexual abuse allegations came to light but removed her after mother tested positive for methamphetamine. Over the course of the dependency, mother participated in many components of her case plan, including substance abuse treatment. However, over that same period, mother tested positive numerous times for methamphetamine and other substances. Mother was not truthful with the Department or juvenile court about using methamphetamine, repeatedly denying that she was abusing the drug or making excuses for her positive tests that did not comport with the facts and circumstances or with the laboratory confirmation of those tests. It appeared she tried to dilute a test or failed to provide urine samples to thwart obtaining accurate results. Mother also had an unauthorized visit with Z.J. after removal, apparently providing her with vape pens and

13

discussing Z.J. meeting up with men for some type of money or payment. Mother's substance abuse, her poor judgment, and her noncompliance with court orders created an environment in which there were no conditions of supervision that would reasonably guarantee Z.J.'s safety in mother's care. (§ 361, subd. (c)(1).)

The juvenile court's dispositional order removing Z.J. from mother's custody is supported by substantial evidence.

## DISPOSITION

The juvenile court's disposition order removing Z.J. from mother's custody is affirmed.

 

       /s/
       Mesiwala, J.


We concur:


 /s/
Renner, Acting P. J.


 /s/
Krause, J.

14